# CHARLESTON.

Ravenswood, S. & G. R'y Co. *v.* Town of Ravenswood.

Submitted January 9, 1896—Decided March 25, 1896.

1. Railroad Companies—Municipal Aid Bonds—Consideration of Stock Subscription.

If, at the time a proposition to subscribe to the stock of a proposed railroad is submitted to the voters of a small municipal corporation, the route of such road is located through the corporate limits of such municipality, in the absence of proof to the contrary such location will be presumed to be a part of such prop-

sition; and if, after the vote is taken, such location is materially changed to a route entirely beyond the limits of such municipality, the right to demand the issuance of the bonds authorized by such vote will be presumed to have been abandoned, even though the authorities of such road should, by leave, obtain the privilege of running trains over the track of another road in full operation, and extending through such municipality on a different route and in a different direction.

2.  RAILROAD COMPANIES—MUNICIPAL AID BONDS—*Mandamus.*
    Under such circumstances, a *mandamus* will not lie to compel the municipal authorities to issue such bonds.

V. B. ARCHER for plaintiff in error, cited Code, c. 54, ss. 57, 58; Code, c. 39, s. 24; 31 W. Va. 781; 128 U. S. 102; Merrill, Mand. § 111; 45 Ala. 696; 127 U. S. 105; 51 Ill. 191; 44 Kan. 676; 92 U. S. 631, 634; 31 Pa. St. 174; 7 Cal. 419; 17 Ind. 318.

ROBERT F. FLEMING, NATHANIEL C. PRICKITT and WM. A. PARSONS for defendant in error:

*Statutes.*—Code, c. 54, ss. 57, 58; Code, c. 39, s. 24; Code, append. 1019; Code, c. 109, s. 2.

*Pleading.*—28 W. Va. 158; Hogg's Pleading & Forms, 496, Form No. 236; 14 W. Va. 55, 63; 14 Am. & Eng. Enc. Law, 220; 40 Ill. 126; 17 W. Va. 595, 612, 613.

*Merits.*—2 High, Inj. (2nd Ed.) ss. 1289, 1290; 31 W. Va. 781 (8 S. E. R. 552-7); 4 Fed. Rep. 378; 47 Fed. Rep. 282; 15 Neb. 262; 4 Ga. 115; 16 Neb. 217; 15 Am. & Eng. Enc. Law, 1259, n. 2, 1260, 1292, 1272-3, 1886; 37 Cal. 354; 7 W. Va. 501-3; 22 Howard, 364; 86 Va. 158 (9 S. E. R. 999); 2 Wood, 584 (Fed. Cas. No. 2,686); 25 Am. & Eng. Enc. Law, 951-2; 20 S. E. R. 921.

DENT, JUDGE:

On the petition of the Ravenswood, Spencer & Glenville Railway Company, the Circuit Court of Jackson county issued a *mandamus nisi* against the town of Ravenswood *et al.*, requiring them to appear and show cause, if any, why the authorities of said town should not be required to issue three thousand dollars of bonds of said town in payment of subscription to the capital stock of the petitioner, authorized by the voters of said town at an election held therein for that purpose on the second Tuesday in July, 1889.

The defendant appeared, and demurred to the said petition and writ. The demurrer having been overruled as a return thereto, they filed their separate answers. To these the plaintiff demurred, but the court overruled the demurrer; and, the plaintiff not pleading or replying to the answers, the court heard the case on the papers filed, orders had, and oral testimony, and entered a final order refusing the relief prayed, quashing the writ, and dismissing the petition. From this order a writ of error and *supersedeas* was awarded, and the plaintiff now here insists that the circuit court, in refusing the relief prayed, erred.

The answer of the town, by its officers, with great prolixity and at length denies everything set out in the alternative writ and petition, but from its numerous allegations the following is gleaned to be the real reason why the bonds were not issued, to wit: That the vote was taken and the bonds were authorized to be issued by the voters of the town of Ravenswood, a small town situated on the Ohio river and Ohio River Railroad, containing about nine hundred inhabitants, with the understanding that the plaintiff's road would be built as then located through the corporate limits of said town, and that, after the vote was taken, the location was changed so as to throw the line without and several hundred feet to the south of the corporate limits.

To such allegation the plaintiff makes no reply or plea, but, in its evidence taken at the hearing, admits the change of location, but seeks to avoid its effect by showing that from the point where its road intersected with that of the Ohio River Railroad Company, it made traffic arrangements with the latter company for the period of ten years by which it was to use the latter company's tracks to reach and enter the corporation of Ravenswood, and also use its depots and terminal facilities therein, and insists that this is substantial compliance with all necessary conditions existing at the time the vote was taken.

There are numerous questions raised, but this presents the real gist of this litigation, the determination of which must settle this controversy. In the case of *Banet* v. *Railroad Co.*, 13 Ill. 504, it is held: "A subscriber to railroad

stock will be held liable to the payment of his subscription although the legislature may have authorized, and the directors of the company may have adopted, a change of route from the first fixed by law, provided the change does not make an improvement of a different character, and his interest is not materially affected by the alteration." And in the case of *Sprague* v. *Railroad Co.*, 19 Ill. 177, in approval of the foregoing decision, it is said: "In determining the question as to how far the original purposes of a corporation may be departed from after subscriptions have been made to its stock without violating the rights of the stockholders individually, we must first consider with what intention and in view of what advantage the law must presume such subscriptions are made. As is clearly manifest from the decision of the case above referred to, the conclusive presumption is that it was with a view to the profits to be derived from the stocks thus subscribed as an investment, and not in reference to any incidental advantages which may accrue to the stockholders by reason of the construction of the improvement, in consequence of any anticipated enhancement of any other property which the stockholders may own, or otherwise." *Railroad Co.* v. *Zimmer*, 20 Ill. 654; *Railroad Co.* v. *Earp*, 21 Ill. 291; *People* v. *Holden*, 82 Ill. 93. These cases (and many others in support thereof might be cited) establish the rule that a subscriber to railroad stock is induced to grant his subscription thereto from the profits and dividends to be derived from the stock, and not from any supposed incidental advantage he may derive from the construction of the road on a peculiar location; and therefore he can not escape the payment of his subscription because of a change in the location of the road detrimental to his private property.

This rule does not apply, however, to the subscriptions of municipal corporations under the laws of this state. They are not permitted to become subscribers to the stock of a railroad without regard to its location, but they are limited to such railroads as are located through, by, or near such corporations, being such railroads as will promote the general prosperity and welfare of the taxpayers of such corporations. It is a well known fact that sub-

scriptions of stock are no longer made by municipalities to railroad companies through prospect of profit to be derived from the investment, for, while in name they are subscriptions to the stock, they are nothing more than gifts, but that they are made to secure the indirect advantages to be derived from the construction of such railroad by the citizens of such municipality in the enhancement ot their property, the increase of the population and taxable subjects and property, and the opportunities for labor and employment furnished. The actual location of the line of the road before the vote for a proposed subscription is had becomes an essential and important factor in securing the assent of the voters, and a material change of such location after such assent is secured is a breach of the condition on which said vote was had, sufficient to vitiate and render it invalid. In the case of *Town of Platteville* v. *Galena & S. W. R. Co.*, 43 Wis. 493, it was held: "It is competent for a railroad company in submitting to a municipality a proposition for aid to define therein, as a part of the proposition the line of the proposed road." And, if it does so, it is bound thereby. Such a proposition may be orally submitted, as well as in writing. And where the road has been already located through a town, and a proposition for aid is submitted to the authorities thereof, it must necessarily be presumed that such location was a part of the proposition. The time, terms, and conditions of the issuance of municipal aid bonds depend entirely on the consent of the legal voters. *Hodgman* v. *Railroad Co.*, 20 Minn. 48 (Gil. 36). Such conditions can not be departed from or changed without the consent of such voters, ascertained in the manner provided by law. *State* v. *County Ct. of Daviess Co.*, 64 Mo. 30; *Chapman* v. *Railroad Co.*, 6 Ohio St. 119; *Næsen* v. *Town of Port Washington*, 37 Wis. 168, 177.

In the case under consideration at the time the vote on the subscription was taken, the railroad had been located through the corporation, and within its limits to the Ohio River Railroad Depot; and it was fully understood by the voters that such was to be its route, as none other had been suggested. This would have been of great benefit to all those along and through whose property it passed,

making such property accessible to and useful for ware-
houses, freight depots, coal and cattle yards, *etc.*, and en-
hancing the value of the property of the town generally as
being near the permanent depots and terminus of such
railroad, including its junction with the Ohio River Rail-
road. Ravenswood is a small country town, containing
about nine hundred inhabitants, and including within its
corporate limits about eighty acres. After the vote was
taken, and resulted favorably, the location was changed so
as to be entirely without the corporate limits, and several
hundred feet south thereof, and to an intersection with the
Ohio River road at a point inaccessible to the town, ex-
cept over the latter road, over which the plaintiff runs its
trains into the town, by virtue of a ten years' lease, afore-
mentioned. This may be in good faith, and it may not be.
Plaintiff claims that it should be received as a full satisfac-
tion to the town for its abandonment of its former route.
Now, it is easy enough for the plaintiff, in conjunction
with the Ohio River road, to relocate their depots at the
junction of the two roads, and thus enhance the value of the
real estate in the vicinity of such junction, and correspond-
ingly depreciate the value of the property within the cor-
porate limits of the town, and thus not only defeat the pur-
poses for which said bonds were authorized, but greatly
interfere with the prosperity of the town. It is true, the
corporate limits could be extended so as to embrace the
new location and terminus of the road, but this would not
secure to the present residents of the town the benefits
they expected to derive from the construction of the road
as located when they authorized the issuance of the bonds.
If there had been no location of the road at the time the
vote was taken, and the proposition had been to build such
road from or even through the town of Ravenswood to the
other terminus thereof, then the building the road to the
Ohio River road to a point so near the corporate limits, and
entering the town over the latter road, might well be
deemed ample compliance with the subscription propo-
sition of the town, provided the assent of the voters could
have been obtained to a proposition of so general a nature.
But the change of the settled location of the road, as un-

derstood by the voters at the time they gave their assent to the issuance of the bonds, whether for the benefit of the plaintiff or others, is undoubtedly a breach of the condition of their authorization, and an abandonment of the plaintiff's right to demand them.

The judgment is therefore affirmed.