# CHARLESTON.

43 90
146 464
43 90
47 277
43 90
56 552

43 90
f63 233
j63 245

NEALE *et al. v.* COUNTY COURT OF WOOD COUNTY *et al.*

Submitted February 5, 1897—Decided March 15, 1897.

1. CONSTITUTIONAL LAW—*Railroad Aid—Magisterial Districts.*
    Section 24 of chapter 39 and section 57 of chapter 54 of the Code of 1891, in allowing subscriptions by magisterial districts in aid of railroads and other works of internal improvement, are not unconstitutional, and such subscriptions are valid. (p. 92.)

2. COUNTY INDEBTEDNESS—*Magisterial Districts — Railroad Aid.*
    A magisterial district cannot, by subscription to works of internal improvement, become indebted up to five *per cent.* of its taxable property, and, in addition, the county up to five *per cent.* of its whole taxable property; but such district subscription, for the purposes of the limitation upon county indebtedness fixed by secion 8, article X, of the Constitution, is to be regarded as county indebtedness, and included with other county indebtedness in determining whether the total county indebtedness will exceed that limitation. (p. 92.)

3. TAX LEVIES—*Magisterial Districts—Railroad Aid.*
    Levies made by the county court to pay such district subscription must be limited to property within such district. (p. 103.)

4. BONDS— *Railroad Aid—Delivery of Bonds.*
    The provision in section 57, chapter 54, Code 1891, that if a railroad corporation fail to construct its road according to its charter public subscriptions shall be void, does not make the completion of such road a condition precedent to the delivery of bonds under such subscriptions. That may, however, be made a condition precedent by the terms of the subscription. (p. 102.)

5. BONDS—*Railroad Aid—Issuance of Bonds—Injunction.*
    The terms and conditions as to the issuance of bonds under a public subscription to works of internal improvement contained in the proposition of subscription approved by the popular vote cannot be changed or departed from, and the

issuance of bonds contrary to such terms and conditions may be enjoined by taxpayers. (p. 108.)

6. BONDS—*Railroad Aid—Sinking Fund.*

It is not indispensable that the elements or outlines of a sinking fund for the discharge of bonds to be issued under a public subscription to works of internal improvement shall be incorporated in the order or proposition submitting the question of subscription to popular vote. Such sinking fund should be provided after the actual incurrence of the subscription debt. (p. 105.)

7. BONDS—*Railroad Aid—Issuance of Bonds—Injunction.*

Public subscriptions to works of internal improvement must be paid in bonds, and such bonds cannot be issued and sold in advance of the proper time for delivery, under such subscription, and the money paid into the public treasury, to be held and afterwards paid under such subscriptions. Such issuance and sale of bonds may be enjoined. (p. 107.)

8. INJUNCTION—*Motion to Dissolve Injunction—Error.*

Where an injunction, as awarded, is too broad, but the facts call for a more limited one, on a motion to dissolve, the injunction should be modified, and made one warranted by the bill; and it is error to wholly overrule the motion to dissolve, and allow the excessive injunction to continue. (p. 109.)

Appeal from ·Circuit Court, Wood county.

Bill by Joseph B. Neale and others against the county court of Wood county, the Little Kanawha Railroad Company, and others. Decree for plaintiffs, and the defendant railroad company appeals.

*Modified.*

V. B. ARCHER, for appellant.

VAN WINKLE & AMBLER, W. P. HUBBARD and H. H. MOSS, for appellees.

BRANNON, JUDGE:

Under an order of the County Court of Wood county submitting to the voters of Parkersburg district the question of a subscription of one hundred and seventy-five thousand dollars to the stock of the Little Kanawha Railroad Company, the voters of that district approved the proposition; and the county court appointed J. M. Jackson agent to make the subscription, and he did make it, upon conditions prescribed by the court orders; and then Joseph B. Neale and other taxpayers sued out an injunc-

tion against the issue of bonds and further proceedings in consummation of the subscription; and, a motion to dissolve the injunction having been overruled, the Little Kanawha Railroad Company has appealed to.this Court.

The first point made against this subscription is that a mere magisterial district has no capacity to make such subscription, and that the clauses of section 24 chapter 39, and section 57 chapter 54 of the Code of 1891, allowing such subscription, are unconstitutional. Virginia's history and laws tell us of that colossal debt which for so many years has rested upon her like an incubus, exhausting her tax resources, retarding her progress, deterring immigration, and constituting a stigma upon her great name and honor. Her lamentable example in this respect was before the authors of the State of West Virginia ; and they took pains to forbid such calamity to the new state, by tying the hands of the legislature or any authority, by the provision in her first Constitution that no debt "shall be contracted by this state" except in a few specified cases, and the provision that the state should not lend its credit to, or assume the debts of, any county, city, town, township, corporation, or person. That protected the people against the incurrence of debt by the state, but there was no barrier against counties and cities and townships; and as in this state multiplying instances of acts authorizing cities, counties and townships to subscribe large sums in aid of railroads warned our people of the danger of burdensome indebtedness in that quarter, the framers of the Constitution of 1872 not only repeated the bar against state debt found in the Constitution of 1863, but provided in section 8, article X, that "no county, city, chool district or municipal corporation  *  *  *  shall hereafter be allowed to become indebted, in any manner or for any purpose, to an amount  *  *  *  exceeding five *per cent.* on the value of taxable propertye therein." Plainly, this speaks a denial of the capacity of counties, school districts and municipal corporations to incur debt beyond a certain limit; but does it deny the power of a magisterial district, as a separate, distinct entity or body, to become indebted at all? It does not do so in terms, but does it do so by implication? Things are sometimes included in, sometimes excluded from, statutes and

constitutions, though not mentioned. *Brown* v. *Gates*, 15 W. Va. 131; *Page* v. *Allen*, 58 Pa. St. 338. Remember that this section was intended as a barrier against onerous local indebtedness, and can we think that while erecting such a barrier against counties, school districts, and municipal corporations, none at all was intended as to magisterial districts? The danger of indebtedness there was just as great as in the instances named. Magisterial districts were not unknown to the authors of the Constitution, as it provides for their formation as well as it provides for school districts; and, if it was designed to give magisterial districts power to run in debt at all, why were they not named along with school districts? It is an obvious instance for the rule, "The expression of one thing is the exclusion of the other." The framers of the Constitution having selected certain ones of the territorial subdivisions, and specified them in this provision, intended to exclude others. It may be said, however, that this provision only prohibits counties, school districts, and municipal corporations from incurring debt beyond a limit, and prohibits only them, and does not touch magisterial districts; in other words, that its function is not to enable counties, school districts, and municipal corporations to incur debt, but only to restrict them in its amount,—that its only mission is to disable them, not to enable them. I construe this clause as one of both enablement and disablement; that is, its purpose is to enable counties, school districts, and municipal corporation to incur debt, and to disable all other subdivisions from doing so. Is it reasonable to say that it was the design to limit counties, school districts, and municipal corporations in their capacity to incur debts, and leave magisterial and senatorial districts unlimited? I think not, because that would defeat the manifest purpose of protecting the people against debt beyond that limit; for if we say that this clause performs the single function of merely limiting counties, school districts, and municipal corporations in power to incur debt, and they only are named, the magisterial and senatorial districts, not being named, may, under legislative sanction, become indebted without limit. We must then say that the Constitution closes certain doors against danger, yet leaves others open to the same danger. It is true that

after empowering counties, school districts, and municipal corporations to incur debt, the section does not, in words, declare an affirmative prohibition against magisterial districts so doing; but that is plainly meant. Would you say that a senatorial district could become indebted? Surely not. It is merely a territorial area made for the election of senators, just as a magistorial district is a territorial area for the election of justices and constables. They are of the same nature, in being merely territorial or political divisions for the election of officers, and in the fact that neither has any other entity or existence, corporate or otherwise. Our most solemn acts, our constitutions, statutes and deeds, do not always, in express words, cover every case or point arising in the shifting current of human affairs; but we must take their language, place ourselves in the position of those who made them, consider what matters they were dealing with, the circumstances surrounding them, the ends to be accomplished, the things evidently meant, and, doing this,—seeing from this Constitution how careful and anxious were its framers to set up bars against destructive indebtedness and exhaustive taxation,—it is out of the question to suppose that they ever dreamed that these magisterial districts, or any other districts than those they named, could be authorized to incur debt. They intended to protect the people against themselves and the legislature,—to tie the hands of both from suicidal acts,—and now to allow these magisterial districts this large liberty would open the way wide to the very evil sought to be warded off. The state is absolutely forbidden to aid corporations or persons in internal improvements. Counties and municipal corporations can do so only to a certain extent. But let this Court say that magisterial districts may do so, and almost every district in the state would be tempted, in the spirit of improvement, to lend its credit to railroads and other works, entailing a mountain of debt on the public. Pertinent, if not pointedly, supporting the construction of the clause of the Constitution involved,—that it, by plain implication, denies the power to create a debt in any other than the instances named,—is the case in the United States supreme court affirming the decision of the Illinois supreme court in *Weightman* v. *Clark*, 103 U. S. 258. There was in-

volved a clause in the Illinois constitution that "the corporate authorities of counties, townships, school districts, cities and towns may be vested with power to assess taxes for corporate purposes"; and it was held that power to tax could not be granted other authorities than the ones named. Another consideration bearing on the construction of this clause, tending to show that no other subdivisions than those named were intended to have debt-making power, is that it is improbable that any subdivision or district of territory would be given power to make a debt without power of taxation to pay it, as it would have no other means of payment. Where is there authority in magisterial districts to tax? The Constitution gives the power of taxation to state, counties, school districts, and municipal corporations, but not to magisterial districts. Those three are corporations, under the Constitution and statutes executing it, having officers, courts, and boards to govern them, possessing taxing power, while a magisterial district has no rulers, is without that artificial personality possessed by a corporation,—a legal nonenity, a merely physical and political subdivision of the county's territory, made for the purpose of electing certain officers, just as a judicial circuit or senatorial district is made merely for the election of certain officers.

In *Gilkeson* v. *Frederick Justices*, 13 Grat. 577, 583, recognizing the right of the legislature to delegate the power of taxation, it is contemplated that it can only be granted to county courts "and other organized bodies." In *Webb* v. *Lafayette Co.*, 67 Mo. 353, under a provision in the constitution that the legislature should not authorize "any county, city or town to become stockholder" in a corporation, unless upon a certain vote, one reason given for holding an act unconstitutional authorizing a township to subscribe is that it was only a territorial subdivision, having no corporate character. In *Harshman* v. *Bates Co.*, 92 U. S. 569, the same act was held unconstitutional because of the vote required by the act being less than the Missouri constitution required, but the opinion questions the power to allow such townships to subscribe. Though in the later case of *Cass Co.* v. *Johnson*, 95 U. S. 360, the same act was held valid, and the former decision reversed, it was not because it was held that such town-

ship could be given such authority, but as the State Supreme Court had not found the act void for want of such vote.    This was before the case of *Webb* v. *Lafayette Co.*    I do not deny the power of the legislature to delegate the power to tax to counties and other organized bodies.    It is well settled.    *Bull* v, *Read*, 13 Grat. 78, 99; *Gilkeson* v. *Frederick Justices*, Id. 584; point 7 in *List* v. *Wheeling*, 7 W. Va. 504.    When, however, the constitution prescribes where the taxing power shall reside,—in what bodies,—this great and dangerous function cannot be delegated to others.    It will be found that our Constitution is careful in its bestowal of this power, declaring what bodies may exercise it, and the expression of one thing in the constitution is exclusive of things not expressed; and this is especially true of provisions declaratory in their nature.    Denials of powers by implication are equally as strong as by expression, if the purpose be plain.    *Page* v. *Allen*, 98 Am. Dec. 272.    I have now no desire to retract the declaration made in *Brannon* v. *County Court*, 33 W. Va. 789 (11 S. E. 34), that I knew of no taxing powers under our Constitution but state, counties, school districts, and municipal corporations; and, though not necessary to the decision of this case, I do not think the legislature could impart to magisterial districts taxing power, wide as is its taxing power, because the Constitution has pointed out the agencies to which it may delegate its taxing powers, has pointed out the authorities to wield this power, and impliedly negatived the power to give it to others.    If such were not the cast of our Constitution, I should not say so.    *Weightman* v. *Clark*, 103 U. S. 258; *Marshall* v. *Silliman*, 61 Ill. 218; Desty, Tax'n, 253, 255, 479.  The legislature has not granted taxing power to magisterial districts, but I use this view to show that, as the Constitution does not contemplate that magisterial districts shall exercise taxing power, so neither does it contemplate that they shall, as separate, independent entities, create indebtedness, since, if it had intended to give the power to create indebtedness, it would have provided for taxing power to discharge that indebtedness.    I shall use no effort to show that a school district, though it may be composed of the same territory as a magisterial district, is not the same as the

latter district. In powers and nature they are wholly distinct. Hence the words "school district," in section 8, article X, of the Constitution, do not mean magisterial district. This is not claimed. Such a district is for educational purposes only. The statute allowing "districts" to subscribe to works of internal improvement does not have reference to school districts, and no law authorizes them to so subscribe.

I have endeavored to show that such district can not, as a separate body, create a debt. This is an important matter, because, if it could do so, then also could the county, school district and municipal corporation each imposes its separate indebtedness, making four debt-creating agencies, whereas three only are contemplated by section 8, article X. This doubling would be unconstitutional. Indeed, the able attorney has, in argument in this court defending this subscription, virtually abandoned that as a warrant for it, though the answers relied on it, and places his defense of it on the contention that, though not strictly a county subscription, yet it is a debt allowed as a county debt under section 8, article X. Let us dispose of this question next. Code, c. 39, s. 24, and section 57 of chapter 54, provides that, when the county court of any county deems it desirable for any district to aid in the construction of a railroad or work of internal improvement, the court may submit the question to a vote in that district; and upon its approval by the voters the court shall cause subscription to be made in the name of the district, and the right to the stock shall be vested in the district. By chapter 54, section 57, the court is to appoint an agent to make the subscription; and its president and clerk are to sign the bonds and annex the seal of the county, and the court levies taxes on the district to pay them. Now, I suppose it may be said that the legislature has power to declare what shall be accounted a county debt under the clause in section 8, article X, of the Constitution, allowing a county debt, so as to enable it to give the impress or cast of county indebtedness under that clause to a district subscription. The features of the statutes just mentioned seem to intend to give that impress of character to such a debt. The district is an integral part of the county. Its police and fiscal affairs are included therein. And the

county court has jurisdiction and control over the fiscal affairs of the county, and necessarily of the district, as a part of it, and because the district has no local officers or government, and the county court performs all its functions, it is for it to allow or refuse a vote of subscription. A railroad is a highway. The establishment of highways or avenues of passage concerns the police power, and the matter of subscription and taxation concerns the fiscal function, and these powers are within the jurisdiction of the county court. They relate to the concerns and well-being of the county, and, though in instances relating more directly to a section or district, they are none the less matters of internal affairs and police and fiscal concerns of the county. If we do not give the act allowing district subscription to railroads this construction, ranking it under the head and character of county indebtedness, under section 8, article X, of the Constitution, and not as a separate, distinct district indebtedness, the act would be unconstitutional, and we must, if possible, give it that meaning and construction which will harmonize it with the Constitution; and, though there is question as to the meaning or proper construction of a statute, we may give it a construction not at first view most obvious or natural, in order to make it consistent with the Constitution. *Slack* v. *Jacob*, 8 W. Va. 612. There are features of this legislation putting on such subscription the stamp of a county act; others, that of a district act,—the one valid, the other invalid. The highest court in the land has given to subscriptions to railroads by unincorporated precincts the character of county action, as contradistinguished from precinct action; holding that on such bonds action can be against the county, though the county can levy for their payment on the property of the precinct. Chief Justice Waite, in *Davenport* v. *Dodge Co.*, 105 U. S. 237, said: "A bond implies an obligor bound to do what it is agreed shall be done. Precincts in Nebraska are but political subdivisions of a county. They have no corporate existence and can not contract or be contracted with. They have no corporate officers, and can neither sue nor be sued. Certain officers are elected by the voters of precincts for political, administrative, and judicial purposes, but they are in no sense the representatives of the people of the terri-

tory as a municipality. *Stats* v. *Dodge Co.*, 10 Neb. 20 (4 N. W. 370). Precincts are governed by the county commissioners, the governing board of the county, and by the appropriate officers of the state. Their relation to a county is like that of a ward to a city. Having no corporate existence, no separate municipal authority, they can not, says again the supreme court of the state in the case last cited, 'enter into contracts, directly or indirectly, nor assume obligations which a court might be called on to enforce.' Hence the precinct cannot become the obligor of precinct bonds, and we think it follows that the county, which does not have a corporate existence, and can contract and be contracted with, and upon whose officers is imposed the duty, not only of issuing the bonds, but of providing for the payment of them, is the political entity bound by the obligation, and charged with the debt created thereby. The only difference between the two kinds of debt is that in one all the taxable property of the county is charged with its payment, and in the other only a part. In both the *mandamus* to enforce the levy and collection of the necessary taxes lies to the proper officers of the county alone. This remedy is expressly provided for, and thus the presumption that might otherwise arise of an intention to erect the precinct into a corporation for the purpose of these obligations, because, without it, the bonds could not be enforced, is rebutted. We think, therefore, that the special bonds which the county commissioners are to issue for the precincts are, in legal effect, the special bonds of the county, payable out of a special fund to be raised in a special way. Although the form of expression in the Nebraska statute is somewhat different from that in Missouri, which we were called on to consider in *Cass Co.* v. *Johnston*, 95 U. S. 360, we think the legal effect of it is the same. In Missouri it was provided that the bonds should be in the name of the county, but in Nebraska there can be no bond except it be of the county; and, as a bond is to be made, it necessarily follows that the county must make it. In express terms it is stated that the precinct bonds shall be the same as other bonds,—that is to say, county bonds,—but must contain a statement of their special nature, which confines the area of taxable property to a part, rather than the whole, of the county. If there

is nothing else in the case, therefore, we think it comes within *Cass Co.* v. *Johnston, supra,* and that an action at law will lie in the courts of the United States against the county for the recovery of the special judgment asked for. *County Com'rs* v. *Chandler,* 96 U. S. 205, was upon coupons attached to some of this same issue of bonds. Judgment had been rendered against the county in the court below, and that judgment was affirmed here. No one seemed to think then that the defense now relied on was good, for it was not mentioned in this court or below. The defense then made related only to the authority of a precinct to vote aid for the building of a toll bridge."

"Although in such a bond and its coupons the precinct is the promisor, a suit to recover on such coupons is properly brought against the county. Where such bonds purport on their face to be issued by the board of county commissioners on behalf of the precinct, and are signed by the chairman of the board and attested by its clerk, who is also the clerk of the county, and are sealed with the seal of the county, and the coupons are signed by such clerk, and the bonds refer to the coupons as annexed, the bonds and coupons are issued by the county commissioners." *Blair* v. *Cuming Co.,* 111 U. S. 363 syl. (4. Sup. Ct., 449). The same question was again brought before the United States supreme court in a suit to enforce payment of coupons on certain bonds issued by Nemaha county on behalf of Brownsville precinct in said county. The second point in the syllabus in this case is as follows: "It has been settled by this court in *Davenport* v. *Dodge Co.,* 105 U. S. 237, and *Blair* v. *Cuming Co.,* 111 U. S. 363 (4 Sup. Ct. 449), that coupons like those sued on in this case are obligations of the county, and that an action may be maintained against the county upon them."

Our own decision in *Brannon* v. *County Court,* 33 W. Va. 789, (11 S. E. 34) is cited by counsel as pointedly sustaining this theory. It holds that those taxes laid by a county court for roads under chapter 35, Acts 1881, in a district, are taxes assessed by county authorities, within the meaning of section 7, article X, of the Constitution, providing that county authorities shall never assess taxes in one year in the aggregate exceeding ninety-five *per cent.* on the one hundred dollars valuation. Those taxes

are levied, not for purposes of the whole county, but only
of one district; and yet we considered them as taxes to be
added up with general county levy for county purposes,
thus treating them as county taxes in character. That
classification is supported in our unorganized districts by
*Wright* v. *Railway Co.*, 120 Ill. 541, (12 N. E. 240). It is
to be understood that, rating such district subscription as
county subscription, there can not be distinctively a
county subscription,—that is, one for the whole county up
to five *per cent.* of its taxable property, and, besides, a
subscription for a district up to five *per cent.* of its taxable property,—but both must be added to ascertain the
limit of subscription. It is argued that arguments of inconvenience will repel this construction. It is said that
one district will be at the mercy of the county court and
other districts. In some instances this may be so. But
the county court controls the fiscal and internal affairs of
the county. It can judge when a proposed subscription is
advisable or not, and whether one district ought, as respects others, to be allowed to absorb, or to say how far it
may absorb, the sum of indebtedness within the competency of the county. Parkersburg district includes the important city of Parkersburg. Its needs may be such as to
justify this preference. Other districts do not so much
need railroads. Whether the public weal calls for leave
to this district to make a debt largely absorbing the debt
capacity of the county is for the discretion of its court. I
assert not that this position is conclusively plain, beyond
the possibility of different opinions; but it is reasonably
so, is fraught with no public harm, is the only one on
which to sustain the legislature's act, and has the support
of the United States Supreme Court, and maintains the
public honor and faith in many instances in which such bonds
have already been issued in good faith and put on the market, and citizens have bought them in good faith, and their
money has gone to the public benefit. I think the first
authority for districts to so subscribe was in chapter 114,
Acts 1872-73, and legislature after legislature has continued
and several times re-enacted that authority, thus giving the
Constitution a legislative construction for a quarter of a
century, and thousands of dollars of honorable engagement rest upon it, so that this Court should be very slow

to revolutionize this long-continued legislative sanction, and entail great losses upon innocent people. If I were very clear and settled in mind, above reasonable question, as I must be to overthrow an act of the legislature, I would not hesitate to do so at the bidding of the Constitution; but surely I am not clear in that direction, and, on the contrary, I think the act can be sustained very plausibly on the ground above given.

It is argued that, if suit on the bonds becomes necessary, it would be a *mandamus* against the county court, and, if it be regarded as county indebtedness, it would logically bind the entire county, and that this can not be so; but I answer that we regard it as county indebtedness, not for every purpose, but only for the question in hand. The *mandamus* would compel a levy only on property within the district, as such is the contract between debtor and creditor, that being the letter of the bond and law. Code 1891, chapter 54, section 59. *Railway Co.* v. *Tribble*, 25 S. C. 260, is cited for the proposition that a tax voted by the people of a township to aid construction of a railroad is not a state, county, or municipal tax. There a manufacturing company sought to have such tax refunded under an act directing such companies to be repaid "state, county and municipal taxes." That case presented the question whether, for the particular purpose of the act to refund, it was the ordinary county or municipal tax, and the court said it was not such a tax, but a special or extraordinary tax designed for specific local improvement, not contemplated in the passage of the refunding act. And, moreover, a township is there a corporation levying a tax.

We therefore decide that said statutory provisions authorizing district subscriptions are constitutional and valid, and such district subscriptions valid.

Another objection to this subscription is that section 57, chapter 54, Code, says that, if a "corporation forfeit its charter or fail to construct its railroad according to the provisions of its charter, the subscription so made shall be be void," and that the completion of the road is a condition precedent to the issue of bonds, and that as this railroad is chartered to run from Parkersburg to Burnsville, and has not even been begun, the bonds can not be

delivered, and as the order submitting the subscription provides for delivery of half the bonds on the completion of seven miles, and the other half on the completing of seven miles more, it is invalid. Did the legislature intend to make the completion of the road a condition precedent to the delivery of the bonds? This is purely a question of intention, whether it arise under an act of the legislature, deed, or otherwise. A condition precedent is one that must happen or be performed before the estate or right can vest. A condition subsequent is one by the failure or nonperformance of which an estate or right will be defeated. 2 Minor, Inst. 261. Did the legislature intend by the provision above stated that a railroad must be completed in its whole length before bonds can be delivered? I think not. The very object of the subscription in the words of section 24, chapter 39, is to "aid in construction," and in most cases such bonds are indispensable to the prosecution of the work. True, it may be that the subscription by the agent, binding the county court to deliver the bonds on completion, can be said to "aid in the construction" of the road, as meant in section 24, as it gives the enterprise the credit of that subscription; but practically few investors would trust to that mere subscription, and themselves subscribe and pay, leaving the county or city yet to pay. Now, the county subscribing is a stockholder generally from the subscription by the agent, the court appoints proxies to represent the stock in stockholder's meetings, the law provides that such subscription shall be paid in the bonds of the county, and the directors may call for payments on stock from time to time; and I suppose a county would be subject to such calls, like any other stockholder, so the terms of its subscription be not violated. The statute does not make different special provisions as to public subscriptions, and therfore presumably intended these general ones to apply to them. So I do not think that the provision above makes the completion of the road a condition precedent to the issuance of the bonds, but they may be issued as provided in the proposition submitted to the vote. Were the completion of the road a condition precedent to the issuance of the bonds, it being a condition made by the law authorizing the bonds, it might be said that it would affect the bonds in the hands of *bona fide*

holders, as all must notice the law allowing the bonds to issue. - *Citizens' Saving & Loan Ass'n* v. *Perry Co.*, 156 U. S. 692 (15 Sup. Ct. 547); note to *Jones* v. *City of Camden* (S. C.) 51 Am. St. Rep. 831, 838, 845 (s. c. 23 S. E. 141); *Portsmouth Sav. Bank* v. *Village of Ashley* (Mich.) 52 N. W. 74; *Barnett* v. *Denison*, 145 U. S. 139 (12 Supt. Ct. 819); *Barnum* v. *Okolona*, 148 U. S. 393 (13 Sup. Ct. 638). Where completion is a precedent condition, it is strictly enforced. Note to *De Voss* v. *City of Richmond*, 98 Am. Dec. 675. But this is not a question between the holders of bonds and the district, but one between the original parties,—the district and company; and, clearly, if the completion of the work were a condition precedent, the issue of the bonds could be restrained, so they could not involve the district with innocent purchasers. *Ravenswood, S. & G. Ry. Co.* v. *Town of Ravenswood*, 41 W. Va. 732 (24 S. E. 597); Jones, Ry. Secur. §§ 267, 268; *Steines* v. *Franklin Co.*, 8 Am. Rep. 87; *Belo* v. *Commissioners*, 76 N. C. 489. See note to *De Voss* v. *City of Richmond*, 98 Am. Dec. 664, and to *Jones* v. *City of Camden* (S. C.) 51 Am. St. Rep. 822 (s. c. 23 S. E. 141), for full discussion of municipal subscriptions and bonds. What would be the effect upon the bonds, when issued, of the failure to complete the road, is a question not before this Court.

Another point made by counsel against the subscription is that chapter 39, section 24, Code 1891, says that, when a county court deems it desirable for the county or district to subscribe in aid of the construction of a railroad, it may submit the question to a vote of the people; and it is contended that the order of submission must affirmatively declare the fact that the court does deem it desirable that the county or district should subscribe, and that this order does not do so. It would seem to be technical, to an extreme, to nullify a subscription for this cause. The very order submitting the question imports that the court deems it desirable that the subscription be made; at least, that it is a proper case for the submission of the matter to the popular decision, which is all I think the clause means. If it did not regard it a proper instance for submission to a vote, it would not submit it, we may assume. That order alone implies that the court has passed on the fact that it deemed it desirable to aid the public work. It implies,

that the court has taken that matter into consideration, ascertained the facts, and decided that a proper case existed for the submission of the subscription to the people. Does the statute say it must in words so declare? Not at all. That lies behind its judgment; that is, behind its order for a vote. As well say that a court in ordinary cases must find all facts preliminary to final judgment, and state them in detail as reasons for its judgment.

Another point made against the subscription is that the proposition, as submitted to a vote, contained no provision for a sinking fund. The Constitution, in article X, section 8, allows a county, school district, or municipal corporation to become indebted to a certain extent, but provides that it shall not do so "without, at the same time, providing for the collection of a direct annual tax sufficient to pay annually the interest on such debt and the principal thereof, within and not exceeding thirty-four years; provided, that no debt shall be contracted under this section, unless all questions connected with the same shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same." The first provision quoted is said to require the creation of a sinking fund for the discharge of the debt created by the subscription within a period correspondent with the pay day of the bonds. Assuming such to be its construction, the legislature has enacted in section 59, chapter 54, Code 1891, that at the time the annual levy of any such county, city, town, or village is laid, there shall be a tax levied to pay the annual interest of the bonds, and to create a sinking fund to pay the principal when due. This is the only statute law to execute the clause of the Constitution in hand. It was within the power of the legislature to make regulation herein. The question then comes up, when must provision be made for such sinking fund? Of course, the actual creation of it cannot be ordered at the date of the order submitting the subscription to the people, since there is no debt at that date. The Constitution uses the words "at the same time"; that is, at the date when an actual debt is incurred binding the subscribing body. The statute says "at the time of the annual levy," meaning at the levy term after the actual incurrence of such a debt. No debt exists from the order submitting the

subscription to vote, none from even the vote sanctioning the subscription, nor even a declaration of the result of the vote by the county court. No debt exists until the court shall, by its agent, make under its order an actual subscription. Until then the court may recede from the proposition. Until then there is no contract. Section 2, *List* v. *Wheeling*, 7 W. Va. 501; 15 Am. Eng. Enc. Law, 1259. In this instance, as the bonds were not to be delivered until work of construction had been done, which might never be done, until then there could be no delivery or debt in existence, and until then no sinking fund could be actually established.

I have just stated when the creation of the sinking fund ought to be made though I think it can be made later, if not then made; but this does not meet the objection made by counsel, I concede, because, while the actual creation of the sinking fund need not be made until the actual legal existence of the debt, yet it can be outlined as an element in the order proposing the subscription; and the question comes up whether or no that order must outline a proposed sinking fund as a matter to be approved by the people as an integral element of the subscription, to meet that clause of the Constitution which requires that all questions connected with the incurrence of the debt shall be submitted to the popular vote. I do not think it an essential or indispensable part of the order of submission. It relates to the payment, rather than the incurrence, of the debt, and is designed for the benefit of the bondholder, as an actual provision and guaranty of payment. It is not essential for the voters, because the law and the order of the court tell them that payment is to made in bonds bearing a certain interest, payable at a certain time; and it is not essential, perhaps not practicable, to tell them in advance just how much is to be raised per year, or what rate of tax is to be imposed per year, to meet interest and principal. Such detail is not meant by the Constitution. They are told what debt is to be incurred, its amount, its interest, that it is to be paid in bonds, and the day of their payment, all the features of the obligation to be imposed on them, and it is the questions or matters entering into the burden they will assume that are meant by the Constitution when it says all questions

touching the incurrence of the debt shall be voted upon; for the very language of the Constitution warrants us in saying that they are questions pertinent to the creation of the debt that are here referred to, not such details of its payment as the outlining of a sinking fund.  That is a mere provision for payment after the creation of the debt, and is left to the county court's later action.  The people have authorized the court to go on and incur the debt, and of course, as a consequence, leave to it the establishment of a sinking fund as a means to an end authorized; that is, the payment of such debt.

Counsel makes the point that, while the order of the court submitting the subscription to a vote prescribes that it is to be paid in bonds, yet a later order authorizing the subscription to be made does not specify that it is payable in bonds, but both orders are to be read together, and one in terms says, as does the statute, that it shall be paid in bonds, and the later order speaks of bonds and their delivery, and thus, in effect, says so; and, besides, the written subscription by J. M. Jackson, agent of the court, to make the subscription, makes it upon the terms and conditions in said orders stated, and it incorporates in the written subscription, as part of it, the order of May 6, 1896, which in terms makes it payable in bonds.  Therefore we reach the conclusion that said subscription is not unconstitutional or void, but valid.

Another question remains to be disposed of.  It is this: The order of the county court of May 6, 1896, submitting to a vote the question whether the subscription should be made, declared that a conditional subscription should be made on these conditions, as conditions precedent; that is to say, that before the subscription should take effect, or any bonds be delivered or money paid, the railroad company must construct its road, ready for rolling stock, from a point at or near the Ohio river, by a certain route, for a distance of seven miles, when one-half the bonds were to be delivered to the company, and the other half on such construction to the Wood county line, a further distance of seven miles, and also locate and construct its depots and general offices in Parkersburg, and its shops in or adjacent to that city.  It further declared that, if there should be failure to construct the road for three years from the elec-

tion, then the subscription should be void. The county court, in its order of 9th June, 1896, incorporated those conditions, but inserted a clause to the effect that as it had been suggested that the bonds could at once be negotiated to the governor of the state, at par, for state purposes, such conditions should in such event be modified so as to permit the agent of the court to convert them into money, to be placed with the county treasurer as a special railroad fund to the credit of the county court, to be paid to the company according to the terms of the subscription, in lieu of bonds. For reasons very apparent, this provision, not present in the proposition for subscription ratified by the people, but first known in this subsequent order, is a departure in material respects from the proposition submitted to the people. They never assented to what this clause calls for. Not a particle of work of construction had been done on the railroad. "The time, terms, and conditions of municipal aid bonds depend wholly on the consent of the voters. Such condtiions cannot be changed." · This is stated as law in Judge Dent's opinion in *Ravenswood S. & G. Ry. Co.* v. *Town of Ravenswood,* 41 W. Va. 736 (24 S. E. 597). See also *Citizens' Saving & Loan Ass'n* v. *Perry Co.* 156 U. S. 692 (15 Sup. Ct. 547). Whatever might be the rights of the state, or any one else, had these bonds been issued under this amendment,—a question not before us,—it is plain that their issue under it could be enjoined, because it would increase the burden on the taxpayers beyond what was contemplated by their vote, since they provided that the bonds should not be delivered until the road should be built, and as a consequence they would date and bear interest only from actual delivery. But this premature issue, if not void, would bind them to interest from a prior date, and it would place the public in danger of paying the bonds, whereas, if there should be failure to construct the road and depot and shops as stipulated, the bonds would not be delivered, and no debt created. It is true, this clause in the court order allowing immediate sale of the bonds did not allow the railroad company to have the money until it complied with the terms of the subscription; but it created a bonded debt, drawing interest, before a spade had been put in the ground in the work of construction, whereas the contract

was for delivery of bonds after certain work done, bearing interest from then, and a sale prematurely created a debt, when it might be that none would ever arise if the conditions of the vote be followed. That vote was to deliver the bonds of the company to pay subscription, in certain events, not to sell them and put the money in the treasury, to bear no interest to offset interest on the bonds, or be lost by embezzlement, misappropriation from its proper purpose, or other chance of time. The statute, the only chart of procedure in such case, provides no right to sell the bonds, but negatives it, by commanding that they shall be delivered to the company in payment of subscription. True, the answers allege that when this suit was brought there was no intention on the part of the governor or the board of the irreducible school fund or the county court to sell the bonds for the benefit of that fund, and that all negotiation looking to such sale of the bonds had been abandoned, and that that provision of the order was no longer intended to be carried out. This is, however, new matter denied by replication, and not proven. And there stands the order of the court allowing a sale to the governor for the school fund, or to any one else, yet in force, liable to be carried out any time. The answer of the county court is no repeal of it, nor an estoppel against its execution. At the date of the institution of this suit, before the answer announced the abandonment of that clause in the order, there it stood, unwarranted by law, and fraught with danger. These public subscriptions creating heavy indebtedness, while often conducive to public interest, in the promotion of internal improvements, are often of doubtful expediency; and the courts must be careful in rigidly observing the safeguards of the law relating to them, and the conditions and limitations fixed by the people.

The bill did not pray a limited injunction against the premature negotiation of these bonds only, but, resting on the theory that the subscription was *in toto* void, prayed for a total injunction against the consummation of the subscription by the issuance of any bonds under it, and that the orders of the county court relating to it and the act of subscription, be decreed void; and an injunction, as so prayed, was allowed, and a motion to dissolve it was

wholly overruled. That injunction was erroneous, because too broad. It should have been limited to the restraint of the execution of the clause of the county court order allowing the immediate sale of the bonds, and, when the court passed on the motion to dissolve, it should have modified the injunction. *Bettman* v. *Harness*, 42 W. Va. 433 (26 S. E. 271). Some cases hold an excessive injunction void; but, as the facts of the bill entitle the plaintiffs to such limited injunction under the prayer for general relief, we will not turn them out of court only to come back for a limited injunction, but will reverse the order wholly overruling the motion to dissolve, and will modify the injunction so that it shall enjoin any sale of said bonds under the clause inserted in the order of the county court of the 9th day of July, 1896, allowing the immediate sale of said bonds, and perpetuating such limited injunction, and dissolving the injunction as awarded by the circuit judge, and dismissing the bill as to all further purposes.

*Modified.*