# CHARLESTON.

HARMAN *et al* v. LAMBERT *et al.*

Submitted February 3, 1915.   Decided June 1, 1915.

1.   QUIETING TITLE—*Right to Remedy—Doubtful Title.*

Where plaintiff's legal title is doubtful because of uncertainty in the identity and location of land claimed by him, his remedy is by ejectment, whether in or out of possession, and not by a bill to remove a cloud from title, equity having no jurisdiction in such case.   (p. 372).

2.   EQUITY—*Right to Relief—Title and Boundaries—Parties in Possession.*

Nor does equity have jurisdiction to settle title and boundaries when plaintiff fails to aver and prove other valid grounds for equitable relief against those in possession of the land.   (p. 372).

3.   LANDLORD AND TENANT—*Possession of Tenant—Change of Nature—Secret Lease.*

If a tenant takes a secret lease from another claiming to be the

76 W. Va.

true owner, without knowledge of his landlord, the character of his possession will not thereby be altered.   (p. 373).

4. QUIETING TITLE—*Jurisdiction—Possession Fraudulently Obtained.*
   Possession fraudulently obtained will not suffice to give equity jurisdiction to remove cloud from title to real estate.   (p. 373).

Appeal from Circuit Court, McDowell County.

Suit by W. F. Harman and others against George W. Lambert and others.  From decree for defendants, plaintiffs appeal.

*Affirmed.*

*Greever & Gillespie, S. M. B. Coulling,* and *J. W. Chapman,* for appellants.

*Strother, Taylor & Taylor,* and *Cook, Litz & Harman,* and *Sanders & Crockett,* for appellees.

LYNCH, JUDGE:

Plaintiffs, some of whom are the heirs at law of David G. Sayers, their co-plaintiffs joining them because of the existing marital relation, brought this suit, praying cancellation of a deed made to defendants by the heirs of H. C. Auvil as a cloud on plaintiffs' title to a tract of 51 acres of land in McDowell county, and for other relief later referred .to and discussed; and from a decree denying such relief and dismissing their bill, plaintiffs have appealed.

Sayers died intestate, seized and possessed of a tract of 3139 acres, embracing, according to plaintiffs' contention, the 51 acres in controversy.  He acquired exclusive title to the tract under a decree of partition entered July 5, 1889, in the chancery cause of William A. Whitley and others against Henry Harrison's heirs and others, pursuant to the report of T. P. Brewster and A. J. Beavers, two of the commissioners appointed for the purpose by a decree entered at the preceding May term of the court having jurisdiction of the cause. On October 25, 1889, Sayers, out of lands other than the tract claimed by plaintiffs, conveyed to H. C. ·Auvil 100 acres, which defendants claim embraces the lands in controversy, the title to which descend to their grantors as heirs at law of the grantee.

The decree denying relief was predicated exclusively upon .plaintiffs' failure to establish by proof the averment that they were in possession of the disputed area. Was the proof introduced for that purpose sufficient to give jurisdiction in equity to dissipate cloud on the legal title? That the 51 acres was embraced in the deed from the Anvil heirs to defendant Lambert, his deed to the defendant Litz and others, and their mining lease to the defendant Dry Fork Colliery Company, clearly appears from the testimony of the surveyors introduced by plaintiffs as witnesses in their behalf. Though the bill charges fraudulent inclusion of the disputed tract in these several grants, they evidently were intended to conform to the Sayers grant to Anvil and to embrace only the lands granted by that deed. There is an entire want of proof or anything showing any intention to the contrary. Plaintiffs did not offer any evidence tending to impeach the *bona fides* of the parties to these conveyances.

Apparently acting upon the theory or belief that their title was free from taint and unassailable on any reasonable ground, defendants early in the year 1909 constructed a building on the 51 acres, and in it as their tenant placed one Joe Crigger to hold for them possession of the lands, then and perhaps still unenclosed. True, the building was hastily constructed and temporary in character, but not in these particulars different from many others in mountainous parts of many counties in this and other states. But, whatever its character and purpose, plaintiffs conceived, and in the nighttime carried into execution, the plan whereby they sought to effect a change in possession, by inducing defendant's tenant to exchange residences with his cousin, Jim Crigger, plaintiffs' tenant on adjoining lands, the purpose being to secure for themselves such possession as would confer jurisdiction to maintain this suit to cancel defendants' deeds as clouds on their title. For, virtually without exception, the rule is that, unless some other special grounds for equitable intervention are averred, a holder of the legal title to real estate must, in order to maintain a bill to quiet title or remove cloud, be in possession of the land when the proceeding is instituted. Clearly, such is the requirement in this jurisdiction. *Poling* v. *Poling,* 61 W. Va. 78; *Whitehouse* v. *Jones,* 60 W. Va.

680; *Logan* v. *Ward,* 58 W. Va. 366; *Mills* v. *Oil Co.,* 57 W.
Va. 255; *Sansom* v. *Blankenship,* 53 W. Va. 411; *Christian*
v. *Vance,* 41 W. Va. 734. Where the sole purpose sought is
the dissipation of such cloud, not only must the bill aver, but
when denied the proof must show, possession of the lands
affected, at the date the proceeding is begun.

Such possession plaintiffs did not have when they brought
this suit, if they fraudulently obtained that on which they
now rely, unless the 51 acres are a part of the 3139 acres;
because possession so procured will not avail as ground for
the maintenance of a bill *quia timet.* As an essential juris-
dictional fact, the possession necessary for such relief in
equity must have been acquired in a legal manner. *Campbell*
v. *Davis,* 85 Ala. 56; *Hardin* v. *Jones,* 86 Ill. 313; *Trotter*
v. *Slayton,* 41 Ore. 117; *Stark* v. *Storr,* 6 Wall. 402; *Gold-
smith* v. *Gilleland,* 22 Fed. 865; *Collier* v. *Carlisle,* 133 Ala.
478. So that plaintiffs' effort to put themselves in a position
to say by their bill that they had possession of the lands in
dispute cannot secure the endorsement or approval of a court
of equity. Such endorsement would set at naught the pro-
visions of §4, ch. 93, Code, saying: ''The attornment of a
tenant to any stranger shall be void, unless it be with the
consent of the landlord of such tenant or pursuant to or in
consequence of the judgment, order or decree of a court''.
Construing this section, we said, in effect, in *Coal & Lumber
Co.* v. *Lumber Co.,* 71 W. Va. 21, *Voss* v. *King,* 33 W. Va.
236, and *Stover* v. *Davis,* 57 W. Va. 196, among other cases,
that the recognition of the title of another than the landlord
who put him in possession, or attornment to such other, by
the tenant of an adversary claimant, will not interrupt the
continuity of the landlord's possession except as provided
by that section, unless with knowledge or notice the landlord
acquiesces in the disloyal conduct of his tenant; or, as in
*Voss* v. *King,* if a tenant takes a secret lease or conveyance
from another claiming to be the true owner, without the
knowledge of his landlord, the character of his possession
will not be altered. 32 Cyc. 1341.

But plaintiffs argue that as defendants were trespassers on
the 51 acres, their acquisition of the possession was not
wrongful, but legitimate and lawful, and therefore not an

infringement of the rule invoked by defendants. The inherent vice of this argument is two-fold. Plaintiffs' acquisition of the possession was, as we have seen, itself tortious, and violative of the prior possession of the defendants taken under color of title. It can not, therefore, enure to plaintiffs' benefit. *Kraus* v. *Congdon*, 161 Fed. 18. Again, the argument assumes as true the very fact in issue in this case, namely, that the 51 acres was part of the 3139 acres, the title to which vested in them as the heirs of the prior owner.

Of the same character, and subject to the same criticism, is the further argument sought to be impressed upon us, that, as plaintiffs were and continuously since the death of Sayers had been in possession of the 3139 acres, they were also in possession of the 51 acres, because the latter was a part of the Sayers tract. As observed, this contention assumes as true the subject matter of the whole controversy. If the fact be as so assumed, this litigation must terminate favorably to plaintiffs; for they have had possession of, and paid taxes on, the 3139 acres and every part of it since the death of their ancestor. But, as indicated, there exists a real and substantial disagreement between plaintiffs and defendants as to the exact situs of the 51 acres, and that diversity involves a determination of the question whether the land in dispute falls within the exterior boundaries of 3139 acres allotted to David G. Sayers in the decree of partition in the Whitley suit, or within the boundaries of the 100 acres conveyed by him to Auvil by the deed of October 25, 1889.

Having reached the conclusion that plaintiffs did not, at the institution of this suit, have the possession deemed requisite solely for cancellation of defendants' deeds as clouds on the title to the 51 acres, was there jurisdiction on other grounds alleged in the original and amended bills to grant such relief? Plaintiffs assign as erroneous the virtual refusal of their claim for recovery of the timber removed from the land in controversy by defendants' vendees. The fact of such sale and removal, while denied in the answers, is substantially proved. But defendants contest the right to such recovery, on the ground of ownership under their deeds from the Auvil heirs. Surely, such relief alone, based as it is upon controverted claims of title, does not justify the main-

tenance of the suit for that purpose. Were plaintiffs' title clear and unimpeachable, or not contested, they might be entitled to the value of the timber, as incidental to other relief upon grounds cognizable in equity. Or, differently stated, such recovery is allowable where equity has jurisdiction to grant other equitable relief. Otherwise, the claimants are relegated to the forum wherein there is a complete and adequate legal remedy.

Plaintiffs also seek to support equitable jurisdiction for the award of relief by cancellation, upon the averment that defendants fraudulently procured the inclusion of the lands in controversy in the grant to them by the Auvil heirs, with knowledge that the 51 acres were not conveyed by Sayers to their ancestor, wherefore his heirs had no title to pass to defendants. But this charge cannot avail for any purpose, without evidence to support it; and we find none in the record.

Did the prayer for an injunction, upon the mere probability or inference that the defendant Dry Fork Colliery Company would proceed to mine coal under the 51 acres, confer jurisdiction in equity to grant the relief prayed by plaintiffs? Although equity has, under certain limitations, jurisdiction to restrain a trespass, the only allegation in the original bill is to the effect that defendants Lambert, Taylor and Litz have leased the 51 acres, together with other adjoining lands, to the colliery company for the mining of the coal therein, and that it was then engaged in operations on the adjoining lands, "and will mine and remove all the coal from the 51 acres unless restrained from so doing". Nor are the averments of the amended bill definite as to the acts and purposes of the company. The charge therein is that the company "is now mining and removing coal" from a mine situated on such other land; that it "is asserting the right to mine and remove the coal from said 51 acres"; that its operations are so situated that "the coal in said 51 acres can be mined and removed from said mine now open and being operated; "that so far as they know or are informed" the company "may be now actually mining the coal" under the 51 acres, "and that if defendants are allowed to mine and remove the same they will thereby destroy the corpus

of the estate and work irreparable injury to plaintiffs''. Neither bill distinctly avers that the company is engaged in operations on the disputed tract, or that it has threatened to enter upon it for that purpose. However, admitting as sufficient these averments to show a threatened trespass, on the land claimed by the plaintiffs, they do not say they have instituted or are about to institute an action of ejectment to settle their title to the land, agreeably to the rule annaunced by this court in *Pardee* v. *Lumber Co.*, 70 W. Va. 68, and *Waldron* v. *Ritter*, 70 W. Va. 470.

But, with more merit, plaintiffs contend that the averments contained in defendants' answers in the nature of cross-bills, that they have title and actual possession of the 51 acres, and praying affirmative relief by the cancellation of plaintiffs' title to the tract should the court be of opinion the 51 acres was part of the lands conveyed by the Auvil heirs, gave jurisdiction, agreeably to the doctrine asserted in 32 Cyc. 1338, that a defendant who files a cross-bill to quiet title thereby gives jurisdiction of the whole controversy, although plaintiff asking the same relief as to his title is not in possession of the land encumbered. But, after the court had expressed a purpose to deny plaintiffs' any relief upon their bill, and before the entry of the decree now under review, it being entered upon a rehearing awarded on plaintiffs' petition, defendants moved to strike from their answers any and all allegations of new matter, if any were averred, as grounds for affirmative relief by way of cancellation of plaintiffs' deeds as clouds on defendants' title, and for specific performance of an alleged contract to convey the lands in dispute if not already embraced in the 100 acres, which motion was sustained, and such matter stricken from the answers, over plaintiffs' protest and objection. Whether this ruling was erroneous, as plaintiffs contend, it is unnecessary to decide, because they were not prejudiced by it.

For, conceding as unwarranted the withdrawal of the new matter in the answers of defendants and their prayer for affirmative relief, it is proper to inquire whether, under the proof, equity has jurisdiction to remove a cloud from or quiet the title of either party to the suit. To confer jurisdic-

tion for such purpose, the title of the claimant must be clear, or reasonably free from complication. *Hitchcox* v. *Morrison,* 47 W. Va. 206. "Those only who have a clear legal and equitable title to land connected with possession have a right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title". *Orlin* v. *Smith,* 18 How. 263. "The bill can not be maintained without clear proof of the possession and legal title; * * * if his title is legal, his remedy at law, by action of ejectment, is plain, adequate and complete". *Frost* v. *Spitley,* 121 U. S. 553. *Wallace* v. *Coal Co.,* 58 W. Va. 449, says plaintiff must have both good title and actual possession in order to remove cloud from his lands. Equity has no jurisdiction, upon the sole ground of removal of cloud from title, to try conflicting titles to land at the suit of one holding either legal or equitable title, the adverse claimant being in possession. *Davis* v. *Settle,* 43 W. Va. 17; *Freer* v. *Davis,* 52 W. Va. 1. Nor has it jurisdiction to settle title and boundaries when plaintiff does not aver and prove other valid grounds for equitable relief against defendant. *Watson* v. *Ferrell,* 34 W. Va. 406; *Kemble* v. *Cresap,* 26 W. Va. 603; *Hill* v. *Proctor,* 10 W. Va. 50; *Lange* v. *Jones,* 5 Leigh 192.

Does the case fall within the limitations so prescribed? After stating that the land granted is located "on the south side of Dry fork of Tug river, adjoining lands of Preston Beavers and lands of said Sayers and said Auvil, and being the lower part of the lands sold to J. A. Mulkey by D. G. Sayers and Harrison August 4, 1879, for which they executed their title bond, which has since been assigned to H. C. Auvil", the deed from Sayers to Auvil further bounds and describes the 100 acres as "beginning at a spotted oak, corner to 100 acres known as the Harvey George tract, thence a straight line up the hill to a low gap on top of the ridge that divides Dry fork and the Left-hand fork of Lick branch, thence running up said ridge with the top thereof to the head of the Lynn hollow, thence down a spur between said hollow and Dry fork to the division line made by and between Daniel Johnson and Albert Sheppard, former owners of said land, thence with said division line to line of said 100 acres, and

with the same, down the river to the beginning''. The proper location of the 100 acres depends upon the identification of the beginning corner called for in the Sayers deed. While the civil engineers employed by plaintiffs, finding no such monument, began at a red oak pointed out to them by plaintiffs as the true corner of the George tract near what they say was the stump of a spotted oak tree, those employed by defendants, likewise failing, located the corner at a poplar near a small spotted oak tree about 1900 feet east of the red oak so identified by the former. To some extent, the proof tended to support each selection so made. But, while in part the several surveys coincided, they nevertheless disagreed not only as to the true location of the beginning corner, but necessarily also as to other boundary lines and monuments delimiting and demarking the Auvil 100 acres and the actual acreage it contained, plaintiffs' surveyors fixing the quantity at about 60 acres, defendants at 109 acres. However, from the very nature of the controversy, and in view of the great mass of conflicting testimony, raising, as it does, a doubt and uncertainty as to whether the land in controversy is part of the 3139 acres claimed by plaintiffs or a part of the 100 acres claimed by defendants, and as to whether plaintiffs or defendants are the true owners of the legal title, we deem this case one peculiarily appropriate for jury determination in an action of ejectment, and not for a court of equity upon a bill to dispel cloud from the legal title, if any, of either party. In this view of the case, the ruling upon the motion to dismiss parts of defendants' answers did not operate to plaintiffs' prejudice, equity being without jurisdiction in any aspect of the case.

We are therefore of opinion to affirm the decree.

*Affirmed.*