# CHARLESTON

WHITE, TAX COMMISSIONER *v.* WIRT COUNTY COURT.

Submitted December 10, 1907.   Decided December 17, 1907.

1.  COUNTIES—*Taxation—District Road Purposes.*
    The clause in section 29 of chapter 39 of the Code, as amended by chapter 63 of the Acts of the Legislature of 1907, saying, "The said county court shall thereupon levy so many cents on every hundred dollars of the valuation of the property taxable in the county according to the last assessment thereof, as will cover the estimated amount necessary to be raised for county purposes and as aforesaid approved during the fiscal year; but such levy shall in no case exceed thirty-five cents on the one hundred dollars valuation of property," does not limit the powers of the county courts respecting the amounts to be raised by taxation for district road purposes.   (p. 231.)

2.  STATUTES—*In Pari Materia.*
    Laws relating to different subjects are not *in pari materia.* (p. 239.)

3.  SAME—*Repeal—Repeal of Qualifying Act as Revival of Act   Qualified.*
    The repeal of a statute merely qualifying or limiting another, or excepting something from it, leaves the original statute in full force and vigor. · Such qualifying or limiting statute does not effect a repeal within the meaning of section 10 of chapter 13 of the Code of 1899, section 286, Code of 1906.   (p. 242.)

*Mandamus* by Albert B. White, state tax commissioner, and others, as relators, to compel Wirt county court to lay levies for county and road purposes in conformity with law.

*Writ Denied.*

W. H. WOLFE, JR., and GEO. J. McCOMAS, for petitioners.

WM. BEARD, J. W. MARTIN and WILLIE FOUGHT, for respondents.

POFFENBARGER, JUDGE:

The county court of Wirt county, on the 31st day of July, 1907, levied, for county purposes proper, 35 cents on every one hundred dollars valuation of property in said county, and, in addition thereto, 10 cents on the valuation of property in one district, for road purposes, 30 cents in another, 25 cents in three others, 33 1-3 cents in another and 20 cents in another. Conceiving this levy to be in violation of law, Albert B. White, State Tax Commissioner, and F. T. Lockhart and S. P. Mitchell, citizens, residents and tax-payers of said county, as relators, have asked, in the name of the State, a writ of *mandamus*, to compel said county court to lay levies for county and road purposes in conformity with the law. Their contention is that the court has exceeded the statutory limit upon its power of taxation for county and road purposes.

Section 29 of chapter 39 of the Code, as amended by chapter 63 of the Acts of 1907, requires the county court to make up an estimate, in each year, of the amount necessary to be levied for the current fiscal year, to cover all county debts and liabilities payable during the year, including the probable expenditures for county purposes and proper allowance for delinquent taxes, discount allowed on taxes paid on or before the 30th day of November, expenses of collection and contingencies. Following this requirement and certain directions concerning it, is found the clause relating to the levy, on the construction of which this case turns. It reads as follows: "The said county court shall thereupon levy so many cents on every hundred dollars of the valuation of the property taxable in the county, according to the last assessment thereof, as will cover the estimated amount necessary to be raised for county purposes and as aforesaid approved during the fiscal year; but such levy shall in no case exceed thirty-five cents on the one hundred dollars valuation of property." In connection with it, the former laws relating to the same subject and the statutes concerning levies for

road purposes must likewise be considered. Section 29 of chapter 39 of the Code of 1899 contained no limitation as to the amount to be raised. After requiring the estimate, it said: "The said court shall thereupon levy so many cents on every hundred dollars of the valuation of the property taxable in the county according to the last assessment thereof for state taxation, as will cover the estimated amount necessary to be raised for county purposes during the fiscal year." As amended by chapter 9 of the Acts of 1904, the following limitation was added thereto: "But such levy shall in no case, after the year 1905, exceed sixty cents on the one hundred dollars valuation of property, except for the purposes mentioned in section seven of article ten of the Constitution, unless such levy shall have been submitted to a vote of the people of the county and have received three-fifths of the votes cast for and against the same." It was again amended by chapter 48 of the Acts of 1905 and the limitation changed so as to read as follows: "No county court shall in the year nineteen hundred and five assess or levy taxes, including district road taxes, which shall exceed by more than five per cent the aggreate amount of taxes levied by it in the year nineteen hundred and four; nor in the year nineteen hundred and six assess or levy taxes which shall exceed by more than seven per cent the aggregate amount of taxes levied by it in the year nineteen hundred and four; nor in the year nineteen hundred and seven assess or levy taxes which shall exceed by more than nine per cent the aggregate amount of taxes levied by it in the year nineteen hundred and four. The word 'taxes' shall be construed to include district road taxes, as well as all other taxes for county purposes. * * * * *Provided, second,* that after the year nineteen hundred and seven no county shall in any year assess or levy taxes for any and all purposes, including district road taxes, the aggregate of which shall exceed sixty cents on the hundred dollars valuation of property, except for the support of free schools and the payment of indebtedness as provided in section 7 of article X of the Constitution, unless such levy shall have been submitted to a vote of the people of the county and have received three-fifths of the votes cast for and against the same." While all these changes in chapter 39 were made there remained and still remains unchanged sec-

tions 12 and 22 of chapter 43 of the Code, relating to the power and duty of the county court to assess and levy taxes for road purposes which read as follows: "* * * And the county court of every county in which the said two days' work shall be insufficient to open, construct and keep in good repair, the roads and bridges thereof, shall, at a session of said court held prior to the first day of May in each year, prescribe by order of the court the manner in which the same shall be done, after expending thereon the two days' work aforesaid, whether entirely by a tax on property, entirely by labor, or partly by tax and partly by labor; and it shall prescribe, provide for and lay a sufficient amount of tax, or labor, or both, as the case may be, to open, construct and keep in good repair the roads and bridges in their county during each year." "Sec. 22. When the county court or any other county shall decide to levy a tax in pursuance to the provisions of this chapter, it shall ascertain, as nearly as possible, the amount of money which will be necessary in each magisterial district in their county, together with the labor required to be performed therein, to construct, put and keep in good repair the roads and bridges in such district, and shall by an order entered of record, direct the assessor of the assessment district in which such district may be, to extend on the land property books, required to be made by said assessor, a road tax on the real and personal property taxable in said district, at such rate as may be specified in such order, which levy shall be made upon the latest assessment thereof for state taxation."

While these statutes contained no limitation upon the powers of the court to raise money for county and road purposes, prior to the legislation of 1904, 1905 and 1907, there was a limitation in section 7 of article X of the Constitution to which they were necessarily subject and which reads, in part, as follows: "County authorities shall never assess taxes, in any one year, the aggregate of which shall exceed ninety-five cents per one hundred dollars valuation, except for the support of free schools. * * *" That this clause governs the court in respect to both county and road levies was determined by this Court in the case of *Brannon* v. *County Court*, 33 W. Va. 789, and *Neale* v. *County Court*, 43 W. Va. 90.

It is insisted that the construction given by the court to the Constitutional clause quoted applies to the statutes now under consideration. We are unable to adopt this view. The Constitution is one thing and the statute quite another. The language of the Constitution differs very materially from the language of these statutes, and the decisions above referred to rest largely upon the peculiar terms of the constitutional clause. That clause says county authorities shall not levy taxes in one year in excess of ninety-five cents on every hundred dollars of valuation. Both county levies and road levies are laid by the county authorities. This general language was followed by an exception as to taxes for the support of free schools and the court says: "The fact that certain exceptions from this limitation are specified tends to show that all other taxes are meant to be included within the limitation." The use of the word "aggregate" in the clause was also regarded as significant. The court said: "Another feature of this section 7 strikes me as significant of its meaning, and that is the presence of the word 'aggregate,' the provision being that county authorities shall never assess taxes, 'the aggregate of which shall exceed ninty-five cents per one hundred dollars valuation,' evidently meaning that more than one kind or species of taxes must be added together for the purposes of the limit of taxation here prescribed. What shall be added? Not charges for the many objects of expenditure which a county may incur, but classes or kinds of taxes. Take all this language, and the prohibition is broad." The Court then proceeds to show that road taxes, as such, are levied and disbursed by the county authorities, but not as county levies or county funds *eo nomine*. This brought the road taxes directly within the express terms of the constitutional clause, and, adding them to the county levies proper, brought them also within the word "aggregate," used in that clause. There was a basis in the express terms of the clause for all the reasoning and argument of the Court in reaching its conclusion that the constitutional limitation extended to road levies as well as county levies. The limitation in section 29 of chapter 39 is clothed in different terms. It does not say taxes levied by county authorities shall not exceed thirty-five cents, nor is the word "aggregate" used in it, indicating that more than one class of taxes was intended to be included.

*Neale* v. *County Court* involved a number of questions, all of which differed very materially from this and turned on clauses of the Constitution.  One was, whetherm agisterial districts can incur bonded indebtedness and another, whether district indebtedness shall be added to strict county indebted ness in determining whether the limit on indebtedness, imposed by section 8 of Article X of the Constitution, has been exceeded.  In respect to the latter, it was held that, for the purpose of said clause of the Constitution, such district indebtedness, "is to be regarded as county indebtedness and included with other county indebtedness in determining whether the total county indebtedness will exceed that limitation."  But this conclusion was also based largely on the peculiar language of the limitation clause, which, not recognizing, in terms, any right or power in magisterial districts to make contracts, they being in no sense corporations, but only territorial divisions of the county, said no county court, city, school district, or municipal corporation should, after the adoption of the Constitution, incur indebtedness in excess of five per cent of the valuation of the property therein for purposes of taxation. The court thus found its conclusion in the terms of the clause in the form of an implication.  The reasoning by which it was reached does not apply to a statute, dealing with a different matter and clothed in different terms.

Chapter 39 of the Code is entitled "An Act Concerning the County Courts; their Jurisdiction and Powers."  It relates to many things other than the mere levying and disbursing of the county levies; but it deals specially with the subject of county levies, and fails to make any special provision for the construction and maintenance of roads, bridges, landings, wharves, &c.  Section 23 of that chapter makes it the duty of the county court to cause any road, bridge or public landing belonging to, or under the care or control of, the county to be kept in good repair and condition, but does not prescribe the mode, or manner of doing so.  It says nothing about how they shall be kept in good repair and condition. It makes no provision for a levy for that purpose.  All this is postponed, or omitted, for provision in another place, chapter 43 of the Code.  The levy, authorized and provided for in section 29, is called, in section 30 and others of chapter 39, a county levy.  Nothing is said about including in it

any provision for the maintenance of roads. On the other hand, in chapter 43, provision is made for what is therein termed a road levy and road taxes. The statute seems to contemplate that this levy shall be made not later than the first day of May in each year, while the other levy, authorized by section 29 of chapter 39, called in that chapter a county levy, may be laid after the first day of May, but not later than the month of July. Section 22 of chapter 43 says the tax levied thereunder shall constitute a road fund to be expended, on the order of the county court, in the district in which it may be collected, in the construction and repair of the roads and bridges therein. Special provision is made for the extending of the road levy on the land and personal property books by the assessor, and for collection thereof by the sheriff. It further says the tax shall be collected and accounted for in the same manner as county taxes are collected and accounted for, thereby expressly distinguishing between road taxes or road levies and county taxes or county levies. The same distinction was marked in the amendment of section 29 of chapter 39, made by the Act of 1905, which expressly declared that the limitation should extend to road taxes as well as county taxes. In the opinion of the legislature, these two funds or levies were so clearly and essentially separate and distinct, that a clause expressly bringing road levies within the limitation was deemed necessary and accordingly inserted. This clause having been omitted in the re-enactment of section 29 of chapter 39, made in 1907, the language of that section is now confined to whatever is contemplated in the provisions thereof relating to the estimate. After requiring the estimate, it says the county court shall thereupon levy so many cents on every hundred dollars of the valuation as will cover the estimated amount, and that such levy, the levy to cover the estimate, shall in no case exceed thirty-five cents on the one hundred dollars valuation of property. This estimate, tested by the strict letter of the statute, is the estimate for general county purposes. It is required to be made not later than the month of July. The estimate for road purposes might be made at the same time provided the estimate for county purposes should be made before the first day of May, but the estimate for county purposes may be made after that time, while the direction, as to

the estimate for road purposes, is that it be made before the first day of May, so that, in legislative contemplation, the two estimates need not, and would not, be made at the same time, though we are not to be understood as holding or intimating that the terms of the statute showing intention to have the road levies laid before the first day of May is mandatory. Nor is there any direction in the statute that the estimate for road purposes be put upon the order book of the court. The statute simply says that, when the county court shall decide to levy a tax for road purposes, it shall ascertain as nearly as possible the amount of money which will be necessary in each magisterial district in their county, together with the labor required to be performed therein, to construct and put and keep in good repair the roads and bridges in each district, and shall, by an order entered of record, direct the assessor of the assessment district, in which such district may be, to extend, on the land and property books, required to be made by said assessor, a road tax on the real and personal property taxable in said district, at such rate as may be specified in such order. The levy required, and limited in amount, by section 29 of chapter 39, is a levy laid on all the property in the county; while the levy, authorized by chapter 43, is placed only on the property of a district. But one levy seems to be contemplated by section 29 of chapter 39 of the Code, and, if we say it includes the road levy, it might be thereby stretched to cover a dozen. The words "county purposes" in the section as amended by the Act of 1907, are the exact words of that section in the Code of 1899. Hence they indicate no intent to make the provisions of that section cover road taxes. It is suggested in one of the briefs, that the terms, "all county debts and liabilities payable during each year, including the probable expenditures for county purposes," indicates legislative intent to require the expenditures for district road purposes to be included in the estimate, and so covered by the limitation; but not a word of this is new language. It was all in the old statute, as found in the Code of 1899, and as amended by the Act of 1905, when, in the opinion of the legislature, it was deemed necessary to extend the limitation to district road levies by the insertion of express terms for the purpose. The phrase, "including the

probable expenditure for county purposes," was no doubt put in under the impression that the preceding phrase, "all county debts and liabilities" might not be regarded as covering such future expenditures.

The intention, on the part of the legislature, to limit the power of the county court in respect to the road levies, might be argued from the fact that it limited their powers respecting the county levy, the power of the school boards, respecting school levies, and the power of municipal corporations respecting their levies, and cut down the state tax; but, seeing there was such an intent, and also that it was not carried into execution, by the use in the statute of any word or clause, that can possibly be construed as an expression of such intention, we have what the courts term a *casus omissus*, which it is beyond our power to supply. 26 Am. & Eng. Ency. Law 601, citing a long list of cases, which fully sustain the text. But, if it could be supplied, there is no means by which we can know what limit the legislature would have imposed. The existence of intention to limit road levies being granted, it does not follow by any means that anybody intended to put the aggregate of county and road levies under a thirty-five cent limitation. Had this intention chrystalized into the form of a legislative bill, the limit of the levy might have been ten, fifteen, twenty or twenty-five cents for road purposes in addition to thirty-five cents for county purposes. It being beyond the power of mortal man to tell what limit would have been fixed, if action had been taken on the matter, how can the court read it in by construction? We must know what limit was intended before we can insert it, though thoroughly convinced that the legislature intended to provide a limit. This principle is well illustrated in the law of amendments. A judgment or decree can sometimes be amended, if there is anything in the record by which the court can safely determine how to amend it, but not otherwise. It will never grope in the darkness of uncertainty. *McClain* v. *Davis*, 37 W. Va. 330; *Bent* v. *Patton*, 1 Rand. 25; *Powell* v. *Com.*, 11 Grat. 822; *Richardson* v. *Jones*, 12 Grat. 53. Lost papers may be supplied, if their contents are proven, but not otherwise. Courts will not allow a party to replace a lost paper with something not shown to contain the substance of the lost instrument. The evidence must show

that there was a paper, that it has been lost and what its contents are, before it can be set up or supplied. *Board of Education* v. *Callihan*, 33 W. Va. 209; *Exchange Bank* v. *Morrall*, 16 W. Va. 546. Human experience of centuries has demonstrated the necessity for these rules for the protection of personal and property rights and set them up against him who comes to the courts demanding amendments and restoration of lost instruments. How emphatically reason and fairness unite in demanding their application here by analogy! I think authority also enforces them. A legislative purpose, enacted into law, includes the incidents and consequences strictly resulting from the enactment. When powers, privileges, or property are granted by statute, everything indispensable to their exercise or enjoyment are impliedly granted. An act conferring jurisdiction impliedly grants the power of doing all such acts as are essentially necessary to its execution. These are some of the principal rules relating to implications arising by the construction of statutes. Endlich Stat. Con. 417, 418, 419. Must the court not be able to see that the thing it so reads in is an incident or consequence, or essentially necessary to the exercise or enjoyment of the thing granted, or essentially necessary to the exercise of the jurisdiction, as the case may be; and is not the thing put in thus made certain not only as to the intention to put something in, but also as to the identity of the thing intended? It is the same principle in operation in altered form and under changed conditions. Identification, by whatever means effected, is still nothing more nor less than identification. Nor does the rule, requiring statutes *in pari materia*, relating to the same thing, to be construed together obviate this difficulty. Chapter 39 governs one of the subjects and Chapter 43 the other. County and road levies are treated by the law makers as two distinct things, and so essentially distinct that, when, in legislating so as to cover both in one clause, it was necessary to insert a phrase, expressly linking them together. The limitation of taxation might be regarded as a single subject covering all levies as elements, factors or divisions thereof, or limitation of the powers of the county court as to all levies laid by it might be treated as a single subject, and one statute on that subject preceded by others, relating to it, or a number of contemporaneous statutes, respecting it, would be read

and considered together, upon the inquiry for legislative intent. But no statute, having such generality of scope and purpose, disclosed by any language in it, is now in existence. The clause in section 29 of chapter·39, as amended by the Acts of 1905, is the only one we ever had, and it has been dropped out of the section as amended by the Act of 1907. Not a word of it remains, that imports an intention to include road levies. It did not define county levy as covering road levy, and the county levy is all the present limitation reaches by any express terms. It said taxes in the limitation clause should be deemed to include district road levies, but that clause has been dropped out. We had in the Act of 1905 a general limitation upon the powers of the county court, respecting the amount of taxes it could raise in any one year. Now we have none. Tested by its terms, it is a mere special limitation, affecting the county levy only. If the Act of 1907, in re-casting the limitation clause, had used any terms indicating in the slightest degree an intention not to change its character from a general to a special, limitation, and thus· left room, or laid ground, for two constructions, based upon ambiguous terms, we might well apply the rule *parl materia* and say that road levies are still included. Then both acts would relate to the same thing. The word *par* is not to be confounded with the word similes; it is used in opposition to it, as the expression, *magis pares sunt quam similes*, implying not likeness merely but identity." 26 Am. & Eng. Ency. Law 622.

The rule, forbiding a construction that will lead to an absurd result or defeat the clear intention of the legislature, has been revoked; but we are unable to bring the case within it. When language found in a statute will bear two constructions, one of which is consistent with, and the other contrary to, the general or manifest legislative intention, gathered from other statutes, the context or facts and circumstances, relating to the subject matter, within the judicial knowledge of the court, the former will prevail; and mere clerical mistakes will be corrected, if necessary, to effect its adoption. But in such case, there must be terms susceptible of two or more interpretations; or, at least, the terms of the statute must cover the subject matter of both constructions. A good illustration of an accidental omission of a word which

the court could supply, is found in *Kennedy* v. *Gibson*, 8 Wall. 498. A certain statute provided "That suits, actions and proceedings against any association under this act may be had" &c. A previous act on the same subject had provided that "All suits, actions and proceedings by or against any association may be had" &c. The court said: "Such suits may still be brought by the association in the courts of the United States. If this be not the proper construction, while there is provision for suits against the association, there is none for suits by them, in any court." Both statutes, it must be observed, related to the powers of associations, respecting suits in the federal courts, so that the terms of the later act included the subject matter of the former, more specific act, and the omission of the word "by" was shown to have been inadvertent by the violent and flagrant injury which its intentional omission would have involved. In our case, no terms in the statute under consideration extend to road levies. Moreover, it cannot be assumed that Congress could have intended to deny any association the right to sue at all for vindication of its rights or redress of its wrongs, or to sue in the same courts in which others might sue it. The alleged absurdity resulting in our case is by no means apparent, but, if it were, we have no terms in the act touching the subject to which it is proposed to extend the limitation. Other cases, illustrating the operation of the rule, applicable when two constructions may be predicated on ambiguous terms, are *Laverin* v. *McLaughlin*, 161 Ill. 417; *Gustavel* v. *State*, 153 Ind. 613; *Landrum* v. *Flannigan*, 59 Kan. 436; *Big Black Co.* v. *Com.*, 94 Pa. 459; *Philadelphia* v. *Ridge Ave. &c Co.*, 120 Pa. 190; *State* v. *Mayor &c. of Perryburg*, 14 O. St. 472.

The rule applicable here, for reasons given, and apparent from the terms of the rule itself, was stated in *Slingluff* v. *Weaver*, 66 O. St. 621, as follows: "The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it. And where its provisions are ambiguous, and its meaning doubtful, the history of the legislation on the subject, and the consequences of a literal interpretation of the language may be considered; punctuation may be changed or disregarded; words transposed, or those necessary to a clear

understanding and, as shown by the contest manifestly intended, inserted. But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

The limitation, respecting road levies, put upon county courts by the Act of 1905, and removed by the Act of 1907, did not, while in force, partially repeal the provision of chapter 43, authorizing the raising of such sum for road purposes as the court may deem necessary, so that only an express revival by a subsequent act could give it its original vigor and scope. The act of 1905 wrought a mere qualification, or limitation of, or exception from, the statute, and its subsequent removal left the original act in full force. *McConiha* v. *Guthrie*, 21 W. Va. 134, pt. 4 of syllabus. It did not effect a repeal within the meaning of section 10 of chapter 13 of the Code, providing that "When a law which has repealed another, is itself repealed, the former law shall not be revived without express words for the purpose."

For the reasons herein stated, the writ prayed for will be refused.

### ON RE-ARGUMENT.

Having carefully reconsidered this case, on a re-hearing, we are unable to reach a conclusion different from that which is embodied in the opinion originally filed. Our construction of the clause under consideration does not make it unconstitutional in any sense. We do not make road levies and road funds, district levies and funds in all senses. They are collectible and disbursable by districts only and uncollected road taxes are liens on property within the district for which they were levied and no other. Although levied by the county court, and, therefore, a tax levied by "county authorities," and so within the constitutional limitation, as held in *Brannon* v. *County Court*, district road levies, taxes and funds are, in every practical sense, distinct from the or-

dinary county levies. By the enactment of sections 12 and 22 of chapter 43 of the Code, the legislature has not only given them a separate and distinct existence and impressed upon them certain distinctive qualities and characteristics, but also given them a designation by which they are to be known and dealt with by the county court, and then prescribed the manner of determining their amount as well as that in which they are to be raised and disbursed. In this way, the road tax became known, many years ago, as an entity, a thing different from the ordinary county levy, extending throughout the county, and made a lien on all property in it, and the fund arising from which is to be expended without reference to territorial sub-divisions. Ever since 1872, the statutes have provided for, and contemplated, road maintenance by district levies, as the usual and general plan of opening and keeping them in repair. Having made this separation and dealt with county levies in sections 12 and 22 and others of chapter 43, it is to be presumed that any amendment of section 29 of chapter 39, not applicable in terms or by some reference to the provisions of the other chapter, applies only to the subject matter of said section. For decades it has been the practice of the legislature itself to speak of, and deal with, the one as the county levy and the other as the road levy. We have before us a mere question of legislative intention. No constitutional question is involved. There is not a suggestion of violation of the constitutional clauses limiting local taxation and indebtedness. Nor can it be said-that our disposition of this case even suggested the creation or existence of a taxing body or tribunal not authorized by the Constitution. It does not, in any sense, place the power to levy road taxes elsewhere than in the county court. Although a distinct fund, it is raised and disbursed by the county court, a tribunal, confessedly established or sanctioned by the constitution. Nor does our failure to give this statute a meaning different from that given the constitutional limitations in *Brannon* v. *County Court*, and *Neale* v. *County Court*, make it unconstitutional. A constitutonal clause, having certain peculiar phraseology and terms, is one thing, and a statute, using entirely different language, is another. The true definition or exposition of the one need not fit the other and in this instance does not.

That county courts, long years ago, maintained all roads as county roads, and had no authority to deal with them as district roads, and still has discretionary power to assume the maintenance of any road, by county taxation, affords no ground for denying the existence of district road levies or power to lay and collect them. When maintenance of roads was a county charge, the tax for that purpose was a county tax in the full and strict sense of the term, and the amount to be raised for that purpose, was included in the estimate for county purposes, and when a county court now makes a road a county charge, the tax levied for that purpose is strictly a county tax, and the amount to be raised for the purpose is included in the estimate. That the county court may open and keep roads in repair as county roads, or district roads, according to their election, does not make the levying of district road taxes a mere apportionment of a county tax or charge among the several districts. It involves no such operation as the raising of a county fund and then dividing it. A county fund is never apportioned. It is expended without reference to district lines, and a district levy cannot be expended elsewhere than in the district. Although road maintenance, whether by county taxation or district taxation, relates to roads, county taxation for that purpose and district taxation for that purpose, are different things, and when the legislature uses language applicable in terms to only one of them, it cannot be extended to the other, merely because both relate to roads. Both leases and deeds relate to land, but we apprehend no one would say a statute relating to deeds only would be construed as relating to leases also. Dozens of similar illustrations might be given, but this fully suffices.

The amendment of 1905 did not define county estimate as including district expenditures for road purposes. The phrase "Including district road taxes" and the clause "The word 'taxes' shall be construed to include district road taxes, as well as other taxes for county purposes," are found in the limitation clause only. Tested by their immediate context and the spirit and meaning of the whole section, read in connection with the provisions of chapter 43, relating to road levies, it means that for the purposes of the limitation thereby imposed, district road taxes should be included. These clauses having been omitted in the amendment and re-enact

of the section in 1907, they are no longer operative. Had they defined the estimate, required by section 29, as well as the limitation, it might be that the omission, from subsequent legislation, of the terms defining it, would be immaterial, but they did not.

*Writ Denied.*

Miller, President, (*dissenting*):

I can not concur in the decision of the Court. Prior legislation and the legal principles applicable are all opposed to the construction given the statute. The insertion in the act of 1905 of the words "including district road taxes," and "The word taxes shall be construed to include district road taxes as well as all other taxes for *county purposes*," did but declare the law as existing prior to the declaration, which only made plainer its meaning, and no more necessary for any other purpose than the insertion of the words "including the probable expenditure for county purposes" after the words "all county debts and liabilities payable during the year" in the forepart of the same section. "A declaratory statute is one which is passed in order to put an end to doubt as to what is the common law or the meaning of another statute, and which declares what it is and ever has been." 23 Am. & Eng. Enc. Law, Orig. Ed., 143; 1 Bl. Com. 86. The maximum limitation of the Constitution on county taxation was based on the method of valuation prevailing at the time of its adoption, and, though adequate then, has become wholly inadequate on the basis of values prescribed by recent legislation; hence the necessity for legislative action.

In view of what has been done in enactment and execution of new laws of taxation, it is unthinkable that, by the omission in the act of 1907 of the declaratory words in the act of 1905, amending section 29 of chapter 39 of the Code, the legislature intended county authorities should go unrestrained with respect to taxation for roads and bridges except by the maximum of the Constitution, or that a *casus omissus* has resulted; rather that the legislature, in view of *Brannon* v. *County Court*, *Neale* v. *County Court* and *Dillion* v. *County Court*, has failed to anticipate the action of this Court on the present occasion in attempting to distinguish between a "county debt or liability," or a levy for "county purposes,"

and a levy for "district road purposes." If those cases decided anything, it was that a debt or liability contracted or incurred by county authorities, on account of or for a district, was a county debt or liability. By the Constitution itself it could be nothing else, no other authority except the county court having power to contract such a debt or incur such a liability. Therefore, *ex necessitate legis,* such debt or liability must be included within the constitutional limitation on incurrence of county indebtedness. If debts or liabilities incurred for district road purposes be county debts or liabilities, then by the very words of command of section 29 they must be included in the annual estimate required of "all county debts and liabilities payable during the year," and recovered by the limitation of thirty-five cents prescribed thereby. As was said by JUDGE POFFENBARGER in *Dillon* v. *County Court,* "the cost of the county government is occasioned by exercise of police power lodged in the hands of the county authorities, which includes the establishment and regulation of roads, ways, bridges, public-landings, ferries and mills and other things." The limitation of the statute is and was plainly intended to be a substitute, under the new conditions created by it, for the constitutional limitation under the old, the Constitution (as held in *Dillon* v. *County Court*) having left the subject of limitation, within the maximum there prescribed, under the control of the legislature. It is no answer to this argument to say that in *Brannon* v. *County Court* and *Neale* v. *County Court* the Court had reference to the limitation on county authorities imposed by the Constitution, that being one thing, the statute another; or that the language of the one differs in some respects from the language of the other. The point here is that the Court in those cases decided, and decided rightly, in the first case that taxes imposed by the county court for road purposes was a debt or liability to be included with other taxes levied by the county court in determining whether the limitation fixed by the Constitution had been exceeded; in the latter, that a district subscription for the purposes of limitation upon the county indebtedness fixed thereby is to be regarded as county indebtedness, and to be included therein determining whether the total county indebtedness will exceed the limitation.

A levy for district road purposes by the county authorities being then a county debt or liability, the statute commands that it be brought into the annual "estimate of the amount necessary to be levied for the current fiscal year to cover *all county debts and liabilities payable during the year,*" and hence must of necessity be brought within the limitation of thirty-five cents on the one hundred dollars. Such estimate could not possibly cover "all county debts and liabilities" if it omitted levies for district road purposes.

The argument based on the fact that, while section 23 of chapter 39 imposes the duty, it is left to chapter 43 to prescribe the manner, of keeping in good repair and condition the county roads, bridges, etc., is equally unavailing to avoid the statute of limitation. Chapter 46 does the same thing with respect to the poor, section 28 of that chapter requiring the county court to provide therefor in the county levy, which in effect is what section 22 of chapter 43 requires with respect to roads, bridges, etc. I can see nothing in the provisions of section 12 of the same chapter to take the levy for district road purposes out of the class "county debts and liabilities payable during the year," nor out of the levy "for county purposes," to which the limitation applies. Chapter 52 of the Code of Virginia of 1860 (the law of this state until the Code of 1868) likewise made provision in a separate chapter for keeping in good repair and condition the public roads. The Code of 1868 adopted as a whole, under the Constitution of 1863, which provided for separate township or district organization, and carried into sections 39 and 47 of chapter 39, substantially the provisions of chapter 53, Code of Virginia, imposing the duty and providing for the levy; and sections 39 and 47, chapter 39, Code of 1868, relating to the same subject, are, so far as the present question is concerned, substantially sections 23 and 29 of chapter 39 of the present Code as amended. The Code of 1868 for the first time introduced the feature of apportioning the levy for roads, etc., among the townships or districts, in connection with the separate township organizations; but by the Constitution of 1872, and the legislation thereunder, such separate township or district organization was abolished, and the county courts restored to their former jurisdiction in respect to roads and bridges, and most of the matters covered by chapter 49,

Code, relating to districts, were superseded by various acts of the legislature, and in many instances rendered obsolete by the provisions of the new Constitution, but retained in the Code because not entirely repealed by express legislation. So it is, I think, with reference to the provision in this chapter for the collection by the sheriff of taxes for roads and bridges; because never expressly repealed, the provisions respecting district road taxes are still retained there, along with the provisions respecting district school taxes. The Code of 1860 left no doubt that levies for roads and bridges were levies for county purposes; and by the employment of the same language in the present Code, and the amendments thereto under consideration, as was well said in argument, "county debts and liabilities" and levies "for county purposes" must be regarded as including district road taxes, regardless of the fact that the declaratory words of the act of 1905 are omitted from the act of 1907.

It seems to me that all provisions of the Code relating to the duty of the county courts respecting roads and bridges, and the manner of executing the same, must be read and considered together as a complete whole, and as relating to the same subject, and as *in pari materia.* I can not agree that there is legislative intent here to treat road levies and county levies as distinct subjects, nor that the declaratory words of the act of 1905 were necessary to link them together. The declaration of that act, that "the word taxes shall be construed to included 'district road taxes' as well as all other taxes for county purposes," shows at once that the legislature already regarded district road taxes as "taxes for county purposes;" and, although these words are omitted in the act of 1907, the section otherwise being as before, I do not see how we can escape the conclusion that district road taxes are to be covered in the annual estimate provided for in section 29, and limited thereby.

But, if there was any doubt about this, the duty is upon us to give such construction to the statute, being one of great public interest, as will accomplish the object plainly intended and as will bring it in harmony with the spirit and purposes of the new scheme of taxation of which it is a part.