## WHITTENBERG v. CRAVEN.
### (No. 422–3441.)

(Commission of Appeals of Texas, Section B. Jan. 30, 1924.)

**1. Statutes ⬤═225—Related acts should be read together.**

In the construction of a particular statute, all acts relating to the same subject or having the same general purpose should be read in connection with it, and, if practicable, effect should be given to the entire provisions of each.

**2. Statutes ⬤═159—Repugnant provisions of later statute repeal earlier statute.**

If separate acts relating to the same subject or having the same general purpose cannot be construed so as to be consistent and harmonious in their several provisions, the later statute will be construed as repealing those provisions of the earlier statute between which and the provisions of the later statute irreconcilable repugnancy exists.

**3. Constitutional law ⬤═26—Legislature may do anything not denied by Constitution.**

The people of the state in whom sovereignty resides may do anything through the Legislature, which they have not denied themselves the power to do by the state Constitution.

**4. Constitutional law ⬤═56—Dependent child statute void, in so far as it confers jurisdiction on county courts.**

Rev. St. arts. 2184–2190, are void, in so far as they attempt to confer on county courts authority to determine the custody and control of minors; being repugnant to but not repealing articles 4043–4301, providing for the appointment of guardians and regulating the rights, powers, and duties of guardians and wards, jurisdiction of which is given exclusively to the district court by Const. art. 5, § 8.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Application by Lillian Whittenberg for writ of habeas corpus, to secure possession of a child alleged to be restrained of its liberty by F. A. Craven. A judgment granting the application and awarding the custody of the child to applicant was reversed by the Court of Civil Appeals (216 S. W. 251), and applicant brings error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed, as recommended by the Commission of Appeals.

E. C. Street and F. M. Fitzpatrick, both of Waco, for plaintiff in error.

Jas. P. Alexander, of Waco, for defendant in error.

HAMILTON, J. Mrs. Lillian Whittenberg, mother of Grace Lee Grimes, a child 9 years of age, filed in the Fifty-Fourth district court of McLennan county, an application for writ of habeas corpus to secure the release and possession of the child, alleging that it was restrained of its liberty by F. A. Craven, acting under an order of the county court of said county.

As the result of a complaint duly filed in the county court of McLennan county, sitting as a juvenile court, charging that Grace Lee Grimes was a dependent child, and in response to the verdict of a jury, returned in the trial of the case, that Grace was a dependent child, the county court had entered the following order:

"It appearing to the court that said Grace Lee Grimes is under 16 years of age, to wit, 9 years of age, and that the evidence adduced shows her to be a dependent child, it is therefore ordered, adjudged, and decreed that said child is a dependent child, and a ward of this court, and subject to this and all further orders of this court until finally discharged, or until she reaches the age of 21 years."

On the same day, the court had issued an order of commitment as follows:

"In the above-entitled cause, it appearing to the court that it is to the best interest, morally and physically, of the child, Grace Lee Grimes, that she be turned over to the care and custody of F. A. Craven, probate officer of McLennan county, a suitable person residing in Waco, McLennan county, it is therefore ordered, adjudged, and decreed by the court that the said Grace Lee Grimes be turned over to the care and custody of F. A. Craven, subject to the following stipulations: Until further ordered by this court. And it is further ordered that said F. A. Craven, probate officer, have the right to the custody of said child subject to the further orders of this court."

The above facts, judgment, and order were all alleged in Craven's answer to the petition for writ of habeas corpus. The district court granted the application for the writ and awarded the custody of the child to Mrs. Whittenberg. The Court of Civil Appeals reversed the judgment of the trial court, with instructions to dismiss the cause. 216 S. W. 251.

The Constitution of Texas, article 5, § 8, provides that—

"The district court shall have * * * original jurisdiction and general control over executors, administrators, guardians and minors, under such regulations as may be prescribed by law * * * and shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law."

No provision of the Constitution confers on the county court jurisdiction and control over minors, but article 5, § 16, provides that—

"The county courts shall have the general jurisdiction of a probate court. They shall * * * appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards. * * *"

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The contention of the plaintiff in the trial court, plaintiff in error here, was that the judgment and order of the county court were void because of lack of jurisdiction to direct the custody and control of Grace Lee Grimes, and that the statute (Rev. St. arts. 2184–2190), in terms authorizing the procedure, is in violation of the portions of article 5, § 8, of the Constitution quoted above. The Court of Civil Appeals held that the proceeding in the county court in this case was a proceeding to appoint a guardian for Grace Lee Grimes, and that "the effect of the judgment of that court was to appoint F. A. Craven as such guardian, either temporary or permanent," and was, for that reason, authorized by that portion of article 5, § 16, quoted above.

If the proceeding in the county court was a proceeding for the appointment of a guardian, the holding of the Court of Civil Appeals was correct, of course. Therefore, it is necessary to determine whether it was, or not, a proceeding to appoint a guardian.

Prior to the enactment of title 38 of the Revised Civil Statutes, of which the articles under consideration form a part, the Legislature had enacted title 64 of R. C. S., providing for the appointment of guardians and fully regulating the rights, powers, duties, etc., of guardians and wards. If chapter 1 of title 38, concerning dependent and neglected children, under and by virtue of which the proceeding in this case was brought in the county court of McLennan county and held by the Court of Civil Appeals to have been one for the appointment of a guardian, does authorize the appointment of guardians, then, the articles under consideration, 2184–2190, and those articles of title 64, pertaining to the appointment, rights, duties, etc., of guardians are in pari materia.

"Statutes are in pari materia, which relate to the same person or thing, or to the same class of persons or things. The word 'par' must not be confounded with the term 'similis.' It is used in opposition to it, as in the expression, 'magis pares sunt quam similes;' intimating not likeness merely, but identity. It is a phrase applicable to public statutes or general laws, made at different times, and in reference to the same subject." United Society v. Eagle Bank of New Haven, 7 Conn. 456, 468, 469; State v. Gerhardt, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; Waterford, etc., Turnpike v. People, 9 Barb. (N. Y.) 161; State v. Wirt County Court, 63 W. Va. 230, 59 S. E. 884, 981.

[1, 2] In the construction of a particular statute or in the interpretation of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. Such statutes, being in pari materia, and relating to the same subject, are to be taken together and so construed, in reference to each other, as that, if practicable, effect may be given to the entire provisions of each. The object of the rule is to ascertain and carry into effect the intention of the Legislature, and it proceeds upon the supposition that the several statutes relating to one subject were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions. If they cannot be construed so as to be consistent and harmonious in their several parts and provisions, then either the hypothesis that they relate to the same subject must be abandoned or else the later statute, in so far as it cannot be reconciled and made consistent and harmonious with the earlier, will be construed as repealing those provisions of the earlier statute between which and the provisions of the later statute irreconcilable repugnancy exists. With these principles as guides, let us examine articles 2184–2190 and the provisions of title 64, covering the rights, powers, and duties, etc., of guardians. The italics in the statutes quoted below are ours.

On the hypothetical theory that the dependent and neglected child law undertook to make provision for the appointment of guardians for a special class of minors, any portion of that law not contradictory and antagonistic to the provisions of the law of guardians, as it already stood at the time of the enactment of the dependent and neglected child law, is to be held as merely supplementary thereto and all the general provisions of the old law not contradicted or changed by the later law would apply to the appointment of guardians under both the old and the new alike. Therefore no difficulty is presented by the fact that nothing is said in articles 2184–2190 about oath and bond, etc., of guardians. The provisions of title 64, c. 7, requiring oath and bond, would apply to guardians appointed under the later provisions of the law as well as the earlier provisions, although the county court in this case did not require either oath or bond of Craven.

We therefore pass to a consideration of those respects in which articles 2184–2190 conflict with the provisions of the statutes existing at the time the neglected and dependent child law was enacted. Article 2186 reads:

"Any person who is a resident of the county having knowledge of a child in his county who appears to be a 'dependent' or 'neglected' child may file with the clerk of the county or district court of his county a petition in writing, setting forth the facts constituting the child 'dependent' or 'neglected'; which petition shall be verified by the affidavit of the petitioner. It shall be sufficient, if the affidavit shall be upon information and belief. Such petition shall set forth the name of the parent or parents of such child, if known, and their residence; and if such child has no parent living, then the name and residence of the guardian of such child, if it has one."

Article 4061 of title 64, supra, reads:

"A proceeding for the appointment of a guardian is commenced by written application, filed in the county court of the county having jurisdiction of the case."

Article 4062 thereof reads:

"The application may be made by any person, and it shall state:

"1. The name, sex, age and residence of the minor.

"2. The estate of such minor, if any, and the probable value thereof.

"3. Such facts as show the jurisdiction of the court over the case."

It is observed that article 2186 provides that "any person who is a *resident* of the *county* * * * may file a petition." Article 4062, of title 64, provides that "the application may be made by *any person*." Article 2186 provides that the petition may be filed with the clerk of the *county* or *district* court. Article 4061 provides that the application may be filed in the *county* court alone. Article 2186 provides that the petition shall set forth the facts constituting the child "dependent" or "neglected"; that it shall be verified by the affidavit of the petitioner; that it shall set forth the name of the parent or parents of such child, if known, and their residence; and "if such child has no parent living, then the name and residence of the guardian of such child, if he has one," and requires no more. Article 4062 says the application shall state all of those things enumerated in the statute as shown by the quotation above.

Article 2187 provides:

"Upon the filing of such petition, the judge of said court shall fix the day and time for the hearing of such petition. If it shall appear that one or both of such parents, or guardian, if there be no parents, reside in said county, the clerk of said court shall immediately issue citation; which citation shall include a copy of the petition, which shall be served on such parent, parents or *guardian*, if any, if either can be found in said county, not less than two days before the time fixed for said hearing, requiring them to appear on said day and hour to show cause, if any, why such child should not be declared by said court to be a 'dependent' and 'neglected' child; and such citation shall be served by the sheriff or any constable of the county. In case it shall appear from the petition that neither of said parents are living, or do not reside in said county, and that said child has no guardian residing in said county, or in case one or both of said parents, or the guardian in case there be no parents, shall indorse on said petition a request that the child be declared a 'dependent child,' then the citation herein provided for shall not be issued; and the court may thereupon proceed to a hearing of the case. In case neither of the parents or guardian is found, then the court shall appoint some suitable person to represent said child in said cause."

Article 4063 of the old law provides that—

"Upon the filing of such application, the clerk shall immediately issue citation, which shall state that an application has been filed, and by whom, for the guardianship of the person, or estate, or both, as the case may be, of the minor, naming such minor, and shall cite *all persons interested* in the welfare of such minor to appear at a *term* of the court named in such citation, and contest such application if they see proper to do so."

Article 4064 provides:

"Such citation shall be served by posting copies thereof for not less than ten days before the first day of the term of the court at which the application is to be acted upon, one of which copies shall be posted at the courthouse, and two other copies at two other public places in the county, not in the same city or town."

None of the articles (2184–2190) say anything about the sheriff's return on the citation provided for in article 2187. Article 4065 of the old law provides that—

"The sheriff or other officer serving such citation shall return the same, stating thereon, in writing, the time and places, when and where, he posted such copies, and shall sign such return officially."

Although the Dependent Child Act is made to apply to any child under 16 years of age, nothing is said about his right to be served with citation or his right to waive citation and make his own choice of guardian. Article 4066 of the old law provides that—

"If the minor be fourteen years of age or over, such minor shall be personally served with citation to appear and answer such application; or such minor may, by writing filed with the clerk, waive the issuance of such citation, and make choice of a guardian."

The Dependent Child Act provides that the child may be declared dependent and neglected and may be disposed of under the terms of that law while he already has a guardian, and that without any action to remove the guardian. Article 4082 of the old law provides that—

"Only one guardian can be appointed of the person or estate; but one person may be appointed guardian of the person, and another of the estate. * * *"

And article 4086 provides:

"The guardian of a minor continues in office, unless sooner discharged according to law, until the minor arrives at the age of twenty-one years, or, being a female, marries, or until such minor shall die."

The Dependent Child Act provides (article 2189) that:

"Upon the hearing of such case, if the said child shall be found to come within any of the provisions of article 2184, it shall be adjudged a 'dependent child'; and an order may be entered making disposition of said child as to

the court seems best for its moral and physical welfare. * * *"

It says not a word about the rights of the natural guardian, the father, the parent, the next ascendent in the direct line of such minor, or the next of kin in the collateral line, to be appointed guardian or to have the custody of such child. Chapter 4 of title 64 contains specific provisions conferring upon such persons the right to be appointed as guardian.

The articles under consideration say not a word about who are not qualified to be guardians. The court is left free to do with the child "as to the court seems best for its moral and physical welfare." Article 4078 provides that the following persons shall not be appointed guardians:

"1. Minors, except the father or mother.
"2. Persons whose conduct is notoriously bad.
"3. Persons of unsound mind.
"4. Habitual drunkards.
"5. Those who are themselves or whose father or mother are parties to a lawsuit, on the result of which the condition of the minor or part of his fortune may depend.
"6. Those who are debtors to the minor, unless they discharge the debt prior to such appointment; but this subdivision does not apply to the father or mother of such minor."

It may be said that it is presumed that no court would place such a child in the custody of such persons. Then why did not the Legislature presume that no court would appoint any such person as guardian of a minor? Under the dependent child law it might "to the court seem best for its moral and physical welfare" to place the minor in the custody of "those who are themselves or whose father or mother are parties to a lawsuit, on the result of which the condition of the minor or part of his fortune may depend." Yet article 4078 expressly forbids the appointment of such persons to be guardians of minors.

Article 2190 of the Dependent and Neglected Child Act provides that—

"In any case where the court shall award any 'dependent child' to the care of any individual or institution in accordance with the provisions of this chapter, the child, unless otherwise ordered, shall become a ward and be subject to the guardianship of the institution or individual to whose care it is committed. Such institution or individual shall, with the consent of the court, have authority to place such child in a suitable family home, the head of such family being responsible for the maintenance and education of said child. * * *"

The above-quoted portion of the article authorizes the individual or institution, whose ward the child becomes and subject to the guardianship of which the child is made, to place it, with the consent of the court, in a suitable family home, and makes the head of that family, and not the individual whose ward and subject to whose guardianship the child is, responsible for the maintenance and education of the child. Article 4122 of the old law says:

"The guardian of the person is entitled to the charge and control of the person of the ward, and the care of his support and education, and his duties shall correspond with his rights."

The last sentence of article 2187 is:

"In case any child is adjudged to be dependent or neglected under this chapter, then such parents or guardian shall hereafter have no right over or to the custody, services or earnings of said child except upon such conditions in the interest of such child as the court may impose, or where, upon proper proceedings, such child may lawfully be restored to the parents or guardian."

Article 2190 contains the following provision:

"The court may change the guardianship of such child, if, at any time, it is made to appear to the court such change is to the best interest of the child."

It might be argued that the provisions just quoted merely authorize the removal of the guardian. To which argument it may be replied that article 4199 of the old law provides for removal of the guardian without notice, and article 4200 provides for his removal after citation, and specifies what he may be cited to answer where there is an attempt to remove him. Article 4202 provides that—

"When any person shall have been removed from the guardianship of the person or estate of a ward, he shall not afterward be reappointed to such guardianship."

Not only must the guardian be cited to answer a charge for his removal, but he is entitled to be heard and to appeal from the order attempting to remove him. Arthur v. Reed, 26 Tex. Civ. App. 574, 64 S. W. 831; Ruenbuhl v. Heffron (Tex. Civ. App.) 38 S. W. 1028. Article 2187 provides that the parents or the guardian shall be cited upon the filing of a petition, setting forth the facts constituting the child "dependent" or "neglected." But this plainly was never intended as a citation to answer a charge for removal as shown by the following sentence in the article:

"In case neither of the parents or guardian is found, then the court shall appoint some suitable person to represent said child."

Without further contrasting the articles under consideration with the provisions of the guardianship law, it is apparent that any attempt to reconcile the conflicting portions of the old and the new statutes indicated above would be futile. Their mere statement reveals their irreconcilable repugnancy. If the statutes are in pari materia they are irreconcilable.

Then, if our hypothesis that articles 2184—

2190 provide for guardianship proceedings is correct, those articles, in so far as they are irreconcilable with and repugnant to the law of guardians, as already enacted at the time of the enactment of the dependent and neglected child law, repeal and supplant all portions of the older statutes in conflict with the provisions of the later statutes. Conley v. Daughters of the Republic, 106 Tex. 80, 156 S. W. 197, 157 S. W. 937.

"'An affirmative statute does not repeal an affirmative statute; and if the substance be that both may stand together, they shall have a concurrent efficacy. But if the latter be contrary to the former, it amounts to a repeal of the former, for it is a general principle, "legis posteriores priores contrarias abrogat." But this is meant of a case where a statute, by its matter, necessarily implies a negative, for an act of parliament may be repealed by the express words of a subsequent statute or by implication.'" Brown & Co. v. Chancellor, 61 Tex. 437, 441.

Nothing is said, in the dependent and neglected child statute, about repealing any of the statutes pertaining to guardianship matters. If it repealed any portion of the acts respecting guardianship proceedings, it did so by implication. The repeal of statutes by implication is not favored by the courts. Rogers v. Watrous, 8 Tex. 62, 58 Am. Dec. 100; Sayles v. Robison, 103 Tex. 430, 129 S. W. 346.

The radical change made by articles 2184–2190 in the law of guardians, if those articles are held to authorize guardianship proceedings, is sufficient to rebut and destroy the hypothesis that they do authorize such a proceeding. It is not to be supposed that statutes so indefinite and uncertain in their nature were intended by the Legislature to suspend and destroy the long-established and salutary statutes of this state relating to proceedings in guardianship matters, and to distort so violently the system and symmetry, as a whole, of statutes existing on that subject without mentioning its purpose to repeal those statutes. The results to which the hypothesis that articles 2184–2190 authorize the appointment of guardians lead are such as to force us irresistibly to the conclusion that the hypothesis is false.

These considerations move us to conclude that the "dependent" and "neglected" child law does not authorize the appointment of guardians, and that the proceeding in the county court of McLennan county was not a guardianship proceeding. That law undertook to confer jurisdiction on the district and county courts to dispose of what are denominated in that statute as dependent and neglected children, independently of and in addition to the statutes relating to guardianship proceedings. This being true, do the articles of the statutes contravene the Constitution of Texas?

[3] It is a general principle, recognized since this government was founded, that the people of the state, in whom sovereignty resides, may do anything through their representatives, the Legislature, which they have not denied themselves the power thus to do by the fundamental law made by them, the state Constitution.

We have quoted above the portion of article 5, § 8, giving to the district court "original jurisdiction and general control over minors." The articles under consideration (2184–2190) undertake to confer upon the county court the power to dispose of a minor "as to the court seems best for its moral and physical welfare." In Ex parte Towles, 48 Tex. 413, Chief Justice Roberts said:

"It was certainly the object of the framers of the Constitution to mark out a complete judicial system, by defining generally the province of each of the courts, by reference to the objects confided to the action of each, and the relation of each to the others.

"To that extent it must be held to be permanent, and not subject to change by the action of the Legislature, except as a change may have been provided for. This is plainly, though incidentally, indicated by a special provision for a change in the jurisdiction of the county court."

Judge Davidson of the Court of Criminal Appeals copied the foregoing excerpt, and founded upon it the opinion in the case of Leach v. State, 36 Tex. Cr. R. 248, 36 S. W. 471. At that time the Constitution provided that—

"The judicial power of this state shall be vested in one Supreme Court, and Courts of Civil Appeals, in Courts of Criminal Appeals, in district courts, in county courts, in commissioners' courts, in courts of justices of the peace, and in such other courts as may be provided by law."

The Towles and Leach Cases, supra, held that the Legislature had no authority to change the jurisdiction conferred upon the several courts named in article 5, among which judicial power of the state was distributed. In 1891 the Constitution was amended so that the last sentence of section 1, of article 5, now reads:

"The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."

After that amendment, Judge Brown said, in Harris County v. Stewart, 91 Tex. 133, 142, 41 S. W. 650, 655:

"For the sake of argument we concede that, without the last sentence of section 1, art. 5, the Legislature would, by necessary implication, be prohibited to confer upon any other court than those named, jurisdiction over any subject which was expressly given by the Constitution to any of the courts named therein, because the Legislature would have no power to take from the courts named in the Constitution any jurisdiction conferred upon them,

therefore, could confer none upon 'other courts' if created; but by the last clause of section 1 the prohibitive effect of the first part of that section is completely modified, and the full power of the Legislature over the subject of creating inferior courts is thereby restored. Authority is expressly given to create and organize other courts and to confer upon them such jurisdiction as may be deemed necessary; and to enable the Legislature to accomplish this, power is conferred to conform the jurisdiction of the district and other inferior courts to that of the courts created and organized by the Legislature; that is, the courts created by the Legislature might be invested with jurisdiction concurrent with the district or other inferior courts, or they might be empowered to exercise the judicial functions which, by the Constitution, were conferred upon the district or other inferior courts, within a given territory, to the exclusion of the constitutional courts. In other words, the effect of the language is to place the subject at the complete disposal of the Legislature so far as inferior courts are concerned."

It is noticeable that Judge Brown did not imply that the last sentence of section 1, article 5, confers any power upon the Legislature to change the jurisdiction of any court except—

"to conform the jurisdiction of the district and other inferior courts to that of the courts created and organized by the Legislature."

[4] In fact, the language of the last sentence of section 1, art. 5, allows no such implication. It authorizes the Legislature to conform the jurisdiction of the district and other inferior courts to the jurisdiction of such other courts as the Legislature may establish. It authorizes no change in or conformity of jurisdiction among the courts established by the Constitution, when no court created by the Legislature plays any part in the change or conformity. The Legislature is not given power by that sentence to conform the jurisdiction of district and other inferior courts to each other. It confers power only to conform the jurisdiction of those courts to the jurisdiction prescribed by the Legislature for such other courts as it may establish. Neither that amendment nor any other portion of the Constitution authorizes any diminution in the jurisdiction of district courts, nor any concurrent jurisdiction in the district and county courts over the custody and control of minors. We conclude that articles 2184–2190, R. C. S., in so far as they attempt to confer upon county courts authority to determine the custody and control of minors, are not authorized by the Constitution and are therefore void to the extent that they so attempt to confer that authority upon county courts. Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Ex parte Reeves, 100 Tex. 617, 103 S. W. 478.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended by the Commission of Appeals, being correct under Ex parte Reeves, 100 Tex. 617, 103 S. W. 478, it will be entered as the judgment of the court.

---

⊫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 12, 1924.